Lit Brothers v. Commissioner.
Lit Bros. v. Commissioner
Docket No. 2678.
United States Tax Court
1944 Tax Ct. Memo LEXIS 97; 3 T.C.M. (CCH) 1031; T.C.M. (RIA) 44313; October 3, 1944
*97 Petitioner was the owner of certain Class A second mortgage bonds secured by a second lien on a large hotel building and grounds in the City of Philadelphia. The obligor on these bonds had defaulted in interest and sinking fund payments on its first mortgage bonds several years prior to the taxable years in question. Also it had defaulted in interest payments on its second mortgage bonds several years prior to default in payment of interest on its first mortgage bonds. In the taxable years 1940 and 1941 petitioner sold the bonds which it held for a nominal cash consideration and deducted as a "long term capital loss" the difference between its cost basis and the amount received for such bonds. The Commissioner disallowed the loss on the ground that the bonds had become worthless in some year prior to the taxable years. Held, petitioner has met its burden of proof and has shown that the bonds had not become worthless in some prior year and that it is entitled to have allowed the deduction which it claims. G. E. Employees Securities Corp. v. Manning, 137 Fed. (2d) 637 followed. Milton A. Kamsler, Esq., 1632 Bankers Securities Bldg., Philadelphia, *98 Pa., for the petitioner. William D. Harris, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The deficiency notice in this proceeding states: You are advised that the determination of your income tax liability for the taxable years ended January 31, 1940 and January 31, 1941, discloses a deficiency of $1,941.36 for the year 1940, and a deficiency of $21,779.56 for the year 1941, as shown in the statement attached. The statement attached shows that in his determination of the deficiencies the Commissioner made several adjustments to the net income which petitioner had reported on its income tax returns which had been filed for the two fiscal years in question. Some of these adjustments were in petitioner's favor and some of them were against it. It is necessary to mention only two of these adjustments because all the others have been accepted by petitioner and stand as made by the Commissioner. The two adjustments which are contested by the petitioner are (d) for 1940 by which the Commissioner disallowed a loss of $10,797 claimed by petitioner as resulting from a bond sale, and (c) for 1941 by which the Commissioner disallowed a loss of $98,100 claimed by *99 petitioner as resulting from a similar sale. The Commissioner in his deficiency notice has explained these two adjustments as follows: (d) The losses claimed by you for the fiscal years ended January 31, 1940 and January 31, 1941, in the amounts of $10,797.00 and $98,100.00, respectively, from the alleged sales of Second Mortgage Class "A" bonds of Benjamin Franklin Realty and Holding Company have been disallowed, inasmuch as the said bonds became worthless prior to the taxable years. The petitioner by appropriate assignments of error contests the correctness of the two above described adjustments made by the Commissioner. Findings of Fact Lit Brothers is a Pennsylvania corporation with its principal office in the City of Philadelphia, Pennsylvania. Its income tax returns for the periods here involved were filed with the Collector for the First District of Pennsylvania. Lit Brothers purchased between the years 1922 and 1925 $121,000 par value of second mortgage Class A bonds of the Benjamin Franklin Realty and Holding Company, hereinafter referred to as the "Realty Company", secured on the hotel property known as the Benjamin Franklin Hotel. Philadelphia. Pennsylvania, for a *100 total price of $108,900. On January 29, 1940, petitioner sold $12,000 par value of said second mortgage Class A bonds for a net price of $3.00. The cost of the bonds sold by petitioner was $10,800. Petitioner reported a loss on the sale of these bonds of $10,797 in its Corporation Income and Declared Value Excess Profits Tax Return for the fiscal year ended January 31, 1940. On January 28, 1941, Lit Brothers sold $109,000 par value of said second mortgage Class A bonds, the cost of which bonds to Lit Brothers was $98,100. These bonds were sold with various other securities for a gross price of $2,000. The commission on the sale and taxes in connection therewith amount to $136.68 or a total net sale price to Lit Brothers of $1,863.32. In its income tax return for the fiscal year ended January 31, 1941, petitioner reported its loss on the sale of the securities above described as follows: Cost
Benjamin Franklin Hotel Co.
Preferred Stock
$ 45,000.00
Common Stock
450.00
Bonds
98,100.00
Total Cost
$143,550.00
Less Cash Received
1,863.32
Loss
$141,686.68
Petitioner deducted the above loss from its gross income as net long term loss (from Schedule C) on its income tax *101 return. The Commissioner has disallowed $98,100 of the claimed loss and has explained his reasons therefor as already stated above. There was outstanding a first mortgage covering the property of the Realty Company in the amount of $6,600,000, securing Class A and Class B bonds, with maturity date of February 15, 1933. There was outstanding a second mortgage covering the same property securing Class A and Class B bonds, with maturity date of February 15, 1933. The principal amount of second mortgage Class A bonds outstanding was $2,088,000. The principal amount of second mortgage Class B bonds outstanding was $1,007,000. In 1923 certain business men and corporations, including Cyrus H. K. Curtis, Gimbel Brothers. Strawbridge & Clothier, Lit Brothers (the petitioner) and others interested in maintaining the vicinity of 9th and Chestnut Streets in Philadelphia as a business center organized the Realty Company. The persons and companies named invested $2,000,000 and received second mortgage Class A bonds and all of the stock of the Realty Company. During the construction of the Benjamin Franklin Hotel Building in 1924 an agreement was entered into whereby the Realty Company leased *102 the hotel to the Benjamin Franklin Hotel Corporation, hereinafter referred to as the "Hotel Corporation". The Hotel Corporation was to pay a rental sufficient to pay the interest on the mortgage indebtedness of the Realty Company and to make the payments required under the sinking fund provisions of the mortgages and all other carrying charges. The Hotel Corporation purchased furniture for use in the hotel at a cost of $1,096,952.37. The Hotel Corporation defaulted on its rental payments and made only one sinking fund payment of $20,000, thereby reducing the amount of the first mortgage bonds outstanding to $6,580,000. As of August 15, 1940, there was due on the first mortgage bonds unpaid interest in the amount of $2,054,400. Interest was unpaid on the second mortgage bonds from August 15, 1926. In connection with proceedings before the District Court of the United States for the Eastern District of Pennsylvania in the matter of William S. Boyer, et al. v. Philadelphia Company for Guaranteeing Mortgages, a Corporation, et al., the real estate of the Realty Company was appraised as of February 11, 1935 at $3,813,500. This appraisal did not include the furniture purchased by *103 the Hotel Corporation. In 1940 the real estate of the Realty Company was appraised at $3,185,000 and the furniture and equipment owned by the Hotel Corporation, which was at that time still operating the hotel, was appraised at $350,000. A bill of complaint was filed in the Common Pleas Court of Philadelphia County on April 18, 1940, to foreclose the first mortgage and the property was sold pursuant thereto on May 16, 1941, and the sale was confirmed by the court on June 6, 1941. Both the foreclosure sale and its confirmation occurred subsequent to the two taxable years involved in this proceeding. In the foreclosure proceedings it was held that the mortgage bondholders had no lien on the furniture and equipment in the hotel which were the property of the Hotel Corporation. A plan of reorganization dated October 15, 1940, for the reorganization of the Benjamin Franklin Hotel property was approved by the court on March 17, 1941. This plan provided for the formation of a new company (subsequently incorporated as the Benjamin Franklin Hotel Company and hereinafter referred to as the "New Company"). Under the plan it was provided, inter alia, that all of the preferred stock of *104 the New Company (2,000 shares), $172,000 principal amount of first mortgage bonds of the New Company and 1,720 shares of the common stock of the New Company were to be issued to the Hotel Corporation for distribution among those who may have any direct or indirect claim against the assets of the Hotel Corporation in such proportions as such claimants might agree among themselves. At that time the Hotel Corporation, which had leased and operated the hotel since its construction, was indebted to the Realty Company for rent in arrears amounting to in excess of $2,000,000. The Hotel Corporation received the securities provided for in the plan of reorganization as referred to above and at a meeting held October 21, 1940, resolved that 1,000 shares of the preferred stock of the New Company be paid to first mortgage B bondholders and second mortgage A bondholders of the Realty Company in satisfaction of such claims as such bondholders might have. There were outstanding first mortgage B bonds in the par value of $2,300,000 and second mortgage A bonds in the par value of $2,087,444.42, or a total of $4,387,444.42. Accordingly, the holders of these bonds received one share of preferred stock *105 of the New Company for each $4,388 of bonds. For the $121,000 of bonds formerly held by Lit Brothers there were distributed 27 shares of preferred stock of the New Company and $17.32 in cash in lieu of a fractional share to the then owners of said bonds. This distribution was made on or about March 31, 1942. Twenty-two shares of the preferred stock of the New Company were sold at public sale on May 6, 1942, at a price of $30.25 per share. Other sales of the stock between June 5, 1942 and January 31, 1943, were made at prices between $35 and $38 per share. The annual losses and accumulated deficits of the Benjamin Franklin Realty and Holding Company for the calendar years 1933 through 1940, inclusive, were as follows: Deficit at Beginning
Loss During
Deficit at End
Year
of the Year
the Year
of the Year
1933
$ 812,996.20
$ 148,729.88
$ 961,726.08
1934
961,726.08
141,061.95
1,102,788.03
1935
1,102,788.03
158,373.89
1,261,161.92
1936
1,261,161.92
158,595.33
1,419,757.25
1937
1,419,757.25
121,761.39
1,541,518.64
1938
1,541,518.64
91,916.67
1,633,435.31
1939
1,633,435.31
76,425.75
1,709,861.06
1940 *
1,709,861.06
102,216.95
1,735,652.26
*106 The annual lossesand deficits of the Benjamin Franklin Hotel Corporation for the calendar years 1935 through 1940, inclusive, were as follows: Deficit at
Deficit Plus
Actual Deficit
Beginning of
Loss During
Adjustments Claimed
at End of
Year
the Year
the Year
on Return
the Year
1933
$3,156,381.65
$707,806.39
$3,865,724.20
$3,864,188.04
1934
3,865,724.20
618,810.75
4,489,825.71
4,484,534.95
1935
4,489,825.71
629,928.88
5,137,078.29
5,119,754.59
1936
5,137,078.27
510,590.30
5,655,041.96
5,647,668.57
1937
5,655,041.96
484,090.96
6,165,675.89
6,139,132.92
1938
6,165,675.89
526,293.50
6,743,383.45
6,691,969.30
1939
6,743,383.45
529,329.55
7,278,039.79
7,272,713.00
1940
7,278,039.79
457,720.98
7,743,228.65
7,735,760.77
Any of the stipulated facts not incorporated in the foregoing findings are made a part hereof by reference. Opinion BLACK, Judge: The only issue which we have to decide in this proceeding is whether certain losses claimed by petitioner on its income tax returns for the two taxable years in question, resulting from the sale of certain bonds which it owned in the Realty Company, should be allowed as deductions *107 or whether we should sustain the Commissioner in his disallowance of these deductions on the ground, as stated in his deficiency notice, that such bonds had become worthless prior to the taxable years. All other adjustments made by the Commissioner to the net income as reported by petitioner have been accepted by petitioner and are not in issue. These adjustments will stand in a recomputation under Rule 50 as the Commissioner has made them in his deficiency notice. There is no dispute as to the cost to petitioner of the bonds in question. It is also clear from the facts which have been stipulated that petitioner actually sold the bonds to a bona fide purchaser, and transferred them to such purchaser though for a nominal price. The substance of respondent's contention as stated in his brief, is that the bonds in question had become wholly worthless in some year prior to the taxable years, and that their sale by the petitioner in the taxable years for a nominal price is ineffective to entitle petitioner to a deductible loss. Among the authorities cited by respondent in support of his contention are: Brown v. Commissioner, 94 Fed. (2d) 101, Sol H. Goldberg, 36 B.T.A. 44, *108 aff'd 100 Fed. (2d) 601, cert. denied 307 U.S. 622, Charles Heiss, 36 B.T.A. 833. The substance of petitioner's contention is that bonds are debts and that under the provisions of sec. 23 (k) I.R.C. as amended by the Revenue Act of 1942 to apply retroactively a taxpayer cannot deduct a bad debt except in the year that it becomes worthless; that he does not have to claim a deduction for partial worthlessness but can wait until his debt becomes entirely worthless before claiming his deduction. Petitioner contends that, notwithstanding its debt against the Realty Company as evidenced by the second mortgage, Class A bonds had very small value for several years prior to the sale of such bonds; that nevertheless such debt had some value at the time of the sales and continued to have some value up until the time the reorganization plan was consummated and the holders of second mortgage Class A bonds received a small disbursement thereon. Therefore, says petitioner, its sale of these bonds in the taxable years, even though for a nominal price, must be recognized, and it is entitled to deduct the losses *109 which it claims for the respective taxable years. One of the principal cases relied upon by petitioner is G. E. Employees Securities Corp. v. Manning, 137 Fed. (2d) 637. Petitioner contends that the cases relied upon by respondent are distinguishable on their facts. The applicable statutes are section 23 (f)(g)(1) and (k), I.R.C. as amended, and section 212 (a) Revenue Act 1939 printed in the margin. [1]
*110 It is true, as contended by respondent, if the bonds of the Realty Company did in fact become entirely worthless in some year prior to the taxable years, then their sale in the taxable years for a nominal consideration would be of no avail to petitioner in taking the losses which it claims. Charles Heiss, supra, and cases there cited. On the other hand if these bonds did not become entirely worthless in some prior year to the taxable years, then their bona fide sale in the taxable years will entitle the petitioner to take its loss, even though the price received for such bonds is nominal. G. E. Employees Securities Corp. v. Manning, supra. We may state at this point that no issue is raised that the sales under which petitioner claims its loss were not actually made. The fact that such sales were made and the price received from such sales are stipulated. Therefore, we shall assume that such sales were actual bona fide sales, even though made for a very small consideration. So, as we see it, the real issue which we have to decide in this proceeding is whether these bonds had become worthless in some prior year. In discussing *111 this point both parties cite and comment upon numerous cases. Each case of this kind must necessarily depend upon its own facts and we do not think it would be profitable to enter upon a discussion of the facts of these several cases. As said by the court in G. E. Employees Securities Corp. v. Manning, supra, after discussing the apparent inconsistency of certain decisions: * * * They may be reconciled, however, if it is remembered that in each case the question before the Board or court was whether the taxpayer had met the burden of proving that the loss was in fact sustained in the year in which the taxable deduction was claimed. * * * That is the question we have here to decide, and we think the taxpayer has sustained its burden of proof. In support of its contention that it has sustained its burden of proof on this issue, petitioner submits that as a matter of fact the bonds in question never did become entirely worthless but that on the contrary, they received a small distribution in 1942 following the consummation of the plan of reorganization. As bearing upon this contention petitioner submits the following facts: The Hotel Corporation was *112 indebted to the Realty Company for rent in arrears in an amount, which, by 1940, exceeded $2,000,000.00. This constituted a valuable asset of the Realty Company since the Hotel Corporation owned substantial assets, to wit, the furniture and equipment in the hotel, which it had purchased at a cost of $1,096,952.37. In 1940, this furniture and equipment was appraised at $350,000.00. The Court of Common Pleas of Philadelphia County held in proceedings to foreclose the first mortgage on the real estate that the mortgage bondholders had no lien on this personal property. The Realty Company could therefore look to these very substantial assets of the Hotel Corporation in the enforcement of its claim against the Hotel Corporation for rent. The furniture and fixtures, free of the first mortgage lien, were thus ultimately available to all of the bondholders as general creditors. The prior lien of the first mortgage bondholders did not extend to this personal property and so it was available to all general creditors, including the second mortgage bondholders. So long as the second mortgage A bondholders could look for payment of their claims to an asset valued at $350,000.00 (cost $1,096,952.37) *113 upon the same footing as the other groups of creditors, their bonds could not be deemed worthless. That such claim is not far fetched is borne out by the fact that it has been stipulated that as a result of the reorganization each holder of second mortgage Class A bonds received one share of preferred stock in the new Hotel Corporation for each $4,388.00 of bonds and that "for the $121,000.00 bonds formerly held by Lit Brothers, there was distributed 27 shares of preferred stock of the Benjamin Franklin Hotel Company and $17.32 in cash. The cash was in lieu of a "fractional share". Of course this was a comparatively small amount to receive as a first and final distribution on so large a face value of bonds, but nevertheless it was something and is sufficient, we think, to show that these second mortgage Class A bonds did not become worthless in some year prior to the taxable years. G. E. Employees Securities Corp. v. Manning, supra.In this latter case, relied upon by the petitioner, the court held that certain securities in the Midwest Utilities Company did not become worthless prior to the consummation of the reorganization plan in 1936, and when *114 the taxpayer sold the securities received under the plan of reorganization in that year, it was entitled to take its loss and that the Commissioner could not disallow it upon the ground that the common and preferred stock of Midwest Utilities Company had become worthless in some prior year. We think that under the facts which we have found and under the authority of G. E. Employees Securities Corp. v. Manning, supra, we must sustain the right of petitioner to take its losses resulting from the sales in question. Respondent does not appear to contest the amount of these losses if we should hold that these second mortgage Class A bonds had not become worthless in some prior year. It may be proper to point out that these losses were long-term capital losses as defined in the applicable statute, and therefore allowable in full under section 117 (d) of the Internal Revenue Code as amended by section 212 (a) of the Revenue Act of 1939. Decision will be entered under Rule 50. Footnotes
*. In its return for the year 1940, petitioner reduced the actual deficit of $1,812,078.01 by $76,425.75 claimed as a net operating loss.↩
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(f) Losses by Corporations. - In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise. (g) Capital Losses. - (1) Limitation. - Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117. * * * * *
(k) Bad Debts. - (1) General Rule. -Debts which became worthless within the taxable year; * * * (2) Securities Becoming Worthless. - If any securities (as defined in paragraph (3) of this subsection) become worthless within the taxable year and are capital assets, the loss resulting therefrom shall. in the case of a taxpayer other than a bank, as defined in section 104, for the purpose of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets. (3) Definition of Securities. - As used in this subsection the term "securities" means bonds, debentures, notes, or certificates, or other evidences of indebtedness, issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form. Revenue Act of 1939 SEC. 212. CORPORATION CAPITAL LOSSES. (a) Limitations. Section 117 (d) of the Internal Revenue Code (relating to limitation on capital losses) is amended to read as follows: "(d) Limitation on Capital Losses. - Long-term capital losses shall be allowed, but short-term capital losses shall be allowed only to the extent of short-term capital gains."↩