SOL H. GOLDBERG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77098.   Promulgated June 8, 1937.

*Robert Jackson, Esq.*, and *Aaron Holman, Esq.*, for the petitioner.
*Charles P. Reilly, Esq.*, and *C. H. Curl, Esq.*, for the respondent.

of

50

ARUNDELL: The respondent bases his claim of fraud on three grounds. First, the petitioner's attempted concealment of the improper deduction on Savold stocks by combining it with the Gasoline Products transaction. Second, that petitioner knew the Savold stocks had become worthless long prior to 1928. Third, that the shares claimed to be worthless in the 1919 return were to a large extent the same shares on which a loss was claimed in the 1928 return. The petitioner denies fraud and alleges error in the disallowance of the claimed loss deduction on the Savold stocks.

We shall first consider the question of whether a loss deduction on the Savold stock is allowable for the year 1928. The petitioner alleges that "in 1928 said stock became worthless and was sold or otherwise disposed of." In his reply to the Commissioner's answer he says that in 1928 he knew or suspected the stock had become worthless and void and that in the hope of securing some salvage he turned the stock over to Wiener and agreed to give Wiener all that he could get over $1,290.80. At the hearing the petitioner insisted that the transaction with Wiener was a sale of the stocks.

We are of the opinion that no loss was sustained in 1928 on the Savold stocks and hold that the claimed deduction is not allowable. The Commissioner's disallowance of the deduction "presumably rests upon a correct determination of the facts." *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289. Not only does the evidence in this case fail to overcome this presumption, but it affirmatively convinces us that the Commissioner was right. Stock losses are allowable in the year they are sustained. The loss may be sustained on a bona fide sale or on the worthlessness of the stock. If it arises out of worthlessness, the deduction therefor is to be taken in the year that worthlessness occurs, and it may not be taken in a later year on a sale for a nominal amount. *DeLoss* v. *Commissioner*, 28 Fed. (2d) 803; *Gilbert H. Pearsall*, 10 B. T. A. 467; *Leigh Carroll*, 20 B. T. A. 1029; *Claude D. Cass*, 32 B. T. A. 713; affd., 83 Fed. (2d) 841. The petitioner in this case was at one time very definitely of the opinion that the Savold shares were worthless prior to the year 1928 in which he now seeks to take a deduction. For the year 1919 he claimed a deduction of $38,500 for Savold stock held personally and $375,718.04 for his interest in stock of the so-called pool. He represented in his return that "this company is practically bankrupt and no return is expected. * * * No bidders on stock exchange. Shares are considered

worthless." When the matter was questioned by the Government, he procured sworn statements from brokers and from his then attorney to the effect that the stock was worthless. These he filed with the Government officers. His representations convinced the Commissioner and his claim for a loss on the ground of worthlessness was allowed. In addition to the petitioner's representations there is other convincing evidence that the stock was worthless prior to 1928. Whether worthlessness occurred in 1919 need not be decided. The principal company, Delaware Savold, had its charter revoked by the State of Delaware by proclamation issued in January 1923, which declared that the corporation became "inoperative and void" on March 22, 1922, for nonpayment of taxes. An affidavit of petitioner's former attorney, dated in May 1921, reports the result of his investigation and an interview with the president of the Delaware Savold Co., and concludes "that the stock in the said Savold Tire Corporation and its subsidary corporations has absolutely no value; and had absolutely no value in November, 1919 * * *." A revenue agent who examined petitioner's records for 1919 and prior years and who made an investigation as to the value of the stock reported in 1921 that both the Savold companies had proved absolute failures, that they were defunct, and that there were no assets remaining. These several declarations of worthlessness prior to 1928 are contradicted only by petitioner's claim that he thought the shares had value after 1919 because of the valuable patents that the companies owned. But there is no proof that the patents had value other than petitioner's testimony of their potential value if licensed under a method that he had in mind. Moreover, while it may be assumed that the Savold companies owned the patents, there is no proof of it. The evidence is that petitioner sold the patents to an individual, who, with associates, organized the corporations. In view of the evidence establishing worthlessness prior to 1928, we hold that the respondent rightly disallowed the deduction claimed for that year based on the transaction with Wiener. *DeLoss* v. *Commissioner, supra,* and *Claude D. Cass, supra.*

Aside from the worthlessness of the shares prior to 1928, and for other reasons, we are of the opinion that the transaction with Wiener was not a bona fide sale. The parties to that transaction are not in agreement as to what it was, nor are they consistent in their views. Petitioner's testimony is to the effect that it was a sale. In his reply to the Commissioner's answer the petitioner describes the transaction as one wherein "he turned the stock over to David Wiener and agreed to give said Wiener all that he could get over $1,290.80 for said stock." From this it would appear that Wiener was acting as a broker rather than being a purchaser. Wiener likewise appears to

have some doubt as to what the transaction really was. While he speaks of "buying" the shares, he couples with that the understanding that he was to sell them and get the benefit of anything realized over 10 cents per share. Of course, if the transaction had been an outright sale there would have been no occasion for an agreement that Wiener was to retain any part of the proceeds of sales. Both parties to the transaction seem to have treated the recited consideration rather lightly. Wiener apparently had funds at or after the time of the transaction for he testified that earlier in 1928 he borrowed $25,000 from the petitioner which he has repaid. The petitioner testified that he awaits Wiener's convenience in paying the $1,290.80. In 1930, 1931, and 1932 Wiener gave petitioner his notes covering loans aggregating some $30,000. Wiener's testimony is that to the best of his recollection the $1,290.80 was included in one of the notes given to the petitioner. This is the nearest approach to any recognition of the alleged consideration for the shares. Upon consideration of all the evidence we do not believe that the transaction was a bona fide sale.

Considerable time at the trial and numerous pages in the briefs were directed to the question of whether the shares on which a loss was claimed in 1919 were the same shares as those on which a loss was again claimed in 1928. We find it impossible to say whether they were or were not the same. The petitioner did not keep records complete enough to permit of an identification of shares by certificates or otherwise. His brokerage records are incomplete as to both sales and purchases. Neither side seemed to know the total holdings of petitioner at any time. However, it does not seem to us to be of any particular importance, either on the loss or the fraud question, whether or not the shares were identical. Of course, it would strengthen the respondent's position somewhat if it could be shown that two deductions are claimed for the identical shares. But if they were different blocks of stock a deduction would not be allowable on one in 1919 and on the other in 1928 under the circumstances present in this case. The 1919 deduction was claimed with respect to 13,364 shares, of which 1,450 shares were owned by petitioner individually and 11,914 shares were in the "pool" accounts. If those 13,364 shares were worthless in 1919, as petitioner then vigorously insisted they were, then clearly his other shares were equally worthless at that time, and under the cases above cited the petitioner could not carry over a block of the shares to a subsequent year and take a loss deduction.

Perhaps a word ought to be said at this point as to the so-called "pool." Petitioner claimed a loss in 1919 on Savold shares in a "pool." He now insists that he was not in a pool. He says that he simply paid up some of the margin accounts of employees of a bank.

It appears, though this is not clear, that upon payment petitioner acquired the stock in the account. His return would indicate that he acquired interests to the extent of his payments and the bank employees retained interests corresponding to their payments. However this may be, it is not of importance here to determine whether or not the petitioner was "in a pool." What is of importance is that he claimed ownership of the so-called pool stock to the extent of an interest of 172,500/197,075 and that interest was recognized by the Commissioner and a loss allowed to the petitioner.

We also sustain the respondent on the fraud issue. We have above referred to the statements made in petitioner's 1919 return which indicated worthlessness at that time. If he had any doubt about it then that doubt must have been dispelled in 1921 when he procured and filed sworn statements from brokers and his attorney which unanimously declared the stock worthless. Still later, in 1922 and 1923, he had occasion to inquire into the status of the Savold companies. In his 1922 return he took a deduction of $33,216.56 listed as part payment of a judgment and attorneys' fees and costs growing out of "Savold Tire Corp. affairs." In his 1923 return he claimed a similar deduction of $32,811.25. In view of petitioner's knowledge of the worthlessness of the shares prior to 1928 he can not successfully maintain that he sustained a loss in that year through the pretended sale to Wiener. That transaction was entered into, we are convinced, solely for the purpose of supporting a loss claim which the petitioner knew he was not entitled to take.

When the petitioner came to make a report of the transaction with Wiener he did not make the adequate disclosure that an honest intent would require. The combining of the Gasoline Products and Savold transactions was not a disclosure; it was a concealment. In dollars these two items are the largest on the return and they are the only two that are combined. The excuse offered is that there were five items to be reported in schedule C and only four lines on which to report them so that two items had to be combined. The petitioner was not ignorant of the common practice of attaching separate schedules to returns when the space on the return is inadequate. Several of his returns covering earlier years in evidence have separate schedules attached. We are satisfied that he adopted the method of reporting that he did for the purpose of concealing the true facts covering the transaction with Wiener in Savold shares and thereby falsely and fraudulently understating his income. Cf. *Victor A. Dorsey*, 33 B. T. A. 295. We do not accept the testimony of petitioner's bookkeeper Lang that this manner of reporting was solely his own idea.

Reviewed by the Board.

*Decision will be entered under Rule 50.*