TSUNEO OTSUKI AND TSURUKO OTSUKI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2917–67.    Filed October 29, 1969.

*Francis J. Butler*, for the petitioner.
*Lee A. Kamp*, for the respondent.

WITHEY, *Judge:* Respondent determined deficiencies in income tax and additions to tax for fraud under section 6653(b),[1] I.R.C. 1954, as follows:

| Year | Deficiency | Additions to tax sec. 6653(a) [2] |
|---|---|---|
| 1959 | $2,707.71 | $1,353.85 |
| 1960 | 3,260.53 | 1,630.26 |
| 1961 | 4,988.95 | 2,494.47 |
| 1962 | 5,336.49 | 2,668.24 |
| 1963 | 1,754.67 | 877.33 |

The parties have stipulated all of the material facts pertaining to the unreported income involved herein and after the opening statement, counsel for petitioners agreed that the deficiencies were correct.

The principal issues presented for our consideration are:

(1) Whether any part of the underpayment determined for each of the years involved is due to fraud with intent to evade tax within the purview of section 6653(b) of the 1954 Code;

(2) Whether the petitioners are collaterally estopped from denying the addition to tax for fraud for the years 1962 and 1963 where petitioner wife pleaded guilty and was convicted of criminal tax evasion for those years under section 7201 of the 1954 Code; and

(3) Whether the period for assessment and collection of the tax under section 6501(c) and (e) is applicable for the taxable years 1959 to 1962.

### FINDINGS OF FACT

Some of the facts herein have been stipulated and are found accordingly.

Petitioners Tsuneo Otsuki (sometimes hereinafter referred to as Mr. Otsuki) and Tsuruko Otsuki (sometimes hereinafter referred to as Mrs. Otsuki), husband and wife, reside on a farm near Spokane, Wash.

Petitioners filed joint returns for the taxable years 1959 through 1963, inclusive, with the district director of internal revenue, Tacoma, Wash.

Mr. Otsuki, a resident alien, was born in 1907 in Japan and came to the United States in 1924. He worked on several farms in western Oregon and western Washington and finally settled near Fife, outside of Tacoma, Wash. In May 1938, Mr. Otsuki married his present wife, Tsuruko Kondo.

---

[1] Unless otherwise indicated, all references are to the Internal Revenue Code of 1954, as amended.

[2] The statutory notice of deficiency cites sec. 6653(a) at this point, but the explanatory section of the deficiency notice states that the 50-percentum addition to the tax was imposed under sec. 6653(b), I.R.C. 1954. Since respondent apparently made an inadvertent clerical error, we will consider sec. 6653(b) to be in issue.

Mrs. Otsuki was born on August 16, 1916, in Portage, Utah. She attended Box Elder, Utah, High School through the 11th year. All of the classes at Box Elder, Utah, High School were taught in English and Mrs. Otsuki took the required English literature and grammar courses at the high school.

After their marriage, petitioners lived at Fife, Wash. On or about 1950, they moved to Spokane, Wash., where they began operating a 10-acre truck garden in the Garden Springs area near Spokane, Wash. The truck-garden farm was operated on leased land until 1962. Garden Springs has English-speaking people living in the area.

In October 1962, petitioners purchased the 10-acre truck farm for a purchase price of $25,000, of which $5,000 was paid down and the balance of $20,000 was paid in two installments on January 2, 1963, and July 3, 1963, by the withdrawal of $25,000 from petitioners' savings accounts.

The petitioners have three children: Darrell, born July 3, 1939; Gladys, born May 11, 1943; and Frances, born in February 1945.

During the year 1959, petitioners were paid the following amounts from the various produce houses as compared to the amounts appearing in petitioners' records:

| Paid by | Amount paid | Per taxpayers' records | Unrecorded income |
|---|---|---|---|
| Pacific Fruit & Produce Co | $4,674.95 | $2,984.30 | $1,690.65 |
| Spokane Vegetable Growers | 1,317.60 | 1,894.55 | (576.95) |
| Peirone Produce Co | 7,124.65 | 3,069.70 | 4,054.95 |
| Safeway Stores, Inc | 7,231.43 | 3,126.05 | 4,105.38 |
| Total | 20,348.63 | 11,074.60 | 9,274.03 |

During the year 1959, petitioners reported on their joint return (Schedule F—Schedule of Farm Income and Expenses) the total amount of $11,825.65 from the sale of vegetables.

During the year 1960, petitioners were paid the following amounts from the various produce houses as compared to the amounts appearing in petitioners' records:

| Paid by | Amount paid | Per taxpayers' records | Unrecorded income |
|---|---|---|---|
| Pacific Fruit & Produce Co | $4,133.70 | $2,490.83 | $1,642.87 |
| Spokane Vegetable Growers | 810.82 | 499.91 | 310.91 |
| Peirone Produce Co | 9,018.90 | 5,154.00 | 3,864.90 |
| Safeway Stores, Inc | 8,210.85 | 3,890.99 | 4,319.86 |
| Total | 22,174.27 | 12,035.73 | 10,138.54 |

During the year 1960, petitioners reported farm income on their return (Schedule F) from the sale of vegetables in the total amount of $12,015.72.

During the year 1961, petitioners were paid the following amounts from the various produce houses as compared to the amounts appearing in petitioners' records:

| Paid by | Amount paid | Per taxpayers' records | Unrecorded income |
|---|---|---|---|
| Pacific Fruit & Produce Co | $4,990.55 | [1] $4,661.80 | $174.75 |
| Spokane Vegetable Growers | 613.81 | 613.81 | |
| Peirone Produce Co | 14,334.90 | 8,730.04 | 5,604.86 |
| Safeway Stores, Inc | 8,001.79 | | 8,001.79 |
| Total | 27,941.05 | 14,005.65 | 13,781.40 |

[1] A mathematical error of $214 was made by petitioners resulting in unreported income.

During the taxable year 1961, petitioners reported farm income on their return (Schedule F) from the sale of vegetables in the total amount of $14,215.65.

During the year 1962, petitioners were paid the following amounts from the various produce houses as compared to the amounts appearing in petitioner's records:

| Paid by | Amount paid | Per taxpayers' records | Unrecorded income |
|---|---|---|---|
| Pacific Fruit & Produce Co | $7,991.50 | $5,121.25 | $2,870.25 |
| Spokane Vegetable Growers | 2,520.28 | 1,516.82 | 1,003.46 |
| Peirone Produce Co | 11,691.40 | 7,656.50 | 4,034.90 |
| Safeway Stores, Inc | 5,670.79 | | 5,670.79 |
| Total | 27,873.97 | 14,294.57 | 13,579.40 |

During the taxable year 1962, petitioners reported farm income on their return (Schedule F) from the sale of vegetables in the total amount of $14,047.34.

During the year 1963, petitioners were paid the following amounts from the various produce houses as compared to the amounts appearing in petitioners' records:

| Paid by | Amount paid | Per taxpayers' records | Unrecorded income |
|---|---|---|---|
| Pacific Fruit & Produce Co | $3,346.55 | $3,462.55 | ($116.00) |
| Spokane Vegetable Growers | 3,492.10 | 3,492.10 | |
| Peirone Produce Co | 8,265.49 | 8,185.49 | 80.00 |
| Safeway Stores, Inc | 6,005.61 | | 6,005.61 |
| Produce Supply Co | 2,552.75 | | 2,552.75 |
| Keiner Produce Co | 2,452.05 | | 2,452.05 |
| Total | 26,114.55 | 15,140.14 | 10,974.41 |
| | | [1] 5,000.00 | (5,000.00) |
| | 26,114.55 | 20,140.14 | 5,974.41 |

[1] Mrs. Otsuki included $5,000 in petitioners' return in 1963 to reflect the receipt of $5,000 from Safeway during that year.

During the taxable year 1963, petitioners reported farm income on their return (Schedule F) from the sale of vegetables in the total amount of $20,783.94.

During the years 1959 to 1963, petitioners sold vegetables and other produce to the following produce houses and reported the following amounts of income from these produce houses which resulted in the following amounts of unreported income:

PRODUCE SALES

| Produce house | 1959 | 1960 | 1961 | 1962 | 1963 |
|---|---|---|---|---|---|
| Produce Supply Co. | | | | | $2,552.75 |
| Keiner's Produce | | | | | 2,452.05 |
| Spokane Vegetables Growers | $1,317.60 | $810.82 | $613.81 | $2,520.28 | 3,492.10 |
| Pacific Fruit & Produce | 4,674.95 | 4,133.70 | 4,990.55 | 7,991.50 | 3,346.55 |
| Peirone Produce Co. | 7,124.65 | 9,018.90 | 14,334.90 | 11,691.40 | 8,265.49 |
| Safeway Stores, Inc. | 7,231.43 | 8,210.85 | 8,001.79 | 5,670.79 | 6,005.61 |
| Total sales | 20,348.63 | 22,174.27 | 27,941.05 | 27,873.97 | 26,114.55 |
| Reported per return | 11,825.65 | 12,015.72 | 14,215.65 | 14,047.34 | 20,783.94 |
| Unreported income | 8,522.98 | 10,158.55 | 13,725.40 | 13,826.63 | 5,330.61 |
| Percentage of omission of income | 42 | 46 | 49 | 49 | 24 |

The farm produce checks received from the produce houses were deposited in petitioners' savings accounts, and except for interest accruals, resulted in the increases in the yearend balance of their savings accounts.

As of January 1, 1959, the balance in petitioners' savings accounts was $90,242.28, which increased to $151,462.55 as of December 31, 1962, and decreased to $131,122.20 upon the purchase of their farm for $25,000 in October 1962. The following schedule shows the taxable income reported by petitioners during the years in question as compared to their true taxable income and the increases in their savings accounts for each comparable year:

| Year | Taxable income reported by petitioners | True taxable income | Increase in petitioners' savings accounts |
|---|---|---|---|
| 1959 | $1,517.70 | $12,822.15 | $14,400.44 |
| 1960 | 1,336.51 | 14,538.69 | 15,826.14 |
| 1961 | 1,619.54 | 20,064.32 | 14,920.77 |
| 1962 | 2,130.87 | 21,193.39 | [1] 16,072.92 |
| 1963 | 7,660.34 | 14,133.15 | [2] (20,340.35) |
| | 14,264.96 | 82,751.70 | |

[1] $5,000 withdrawn for downpayment on farm in October 1962.
[2] $20,000 withdrawn for payments on farm on Jan. 2, and July 3, 1963.

The three Otsuki children, Darrell, Gladys, and Frances, also worked on the farm. When they were in school, the children worked after school or on the weekends and always worked in the summertime.

During the years 1959, 1960, and 1963, a deduction of $575 per year appeared on the petitioners' farm records and was deducted for Darrell Otsuki. During 1961, Darrell left the family home to work as an electronics technician for Federal Electric Corp. at Moses Lake, Wash., a distance of approximately 110 miles from Spokane. A farm labor expense for Gladys and Frances of $575 per child per year appeared on the petitioners' records and was deducted on the petitioners' returns for the years 1959 through 1963.

The petitioners paid their children only $575 per year for the reason that it thereby became unnecessary for the children to file income tax returns for such years.

During the taxable years involved herein, petitioners incurred farm expenses in the following amounts:

| Year | Amount |
| --- | --- |
| 1959 | $6, 657. 37 |
| 1960 | 7,. 316. 82 |
| 1961 | 7, 172. 60 |
| 1962 | 8, 005. 60 |
| 1963 | 11, 529. 13 |

During the years in question, petitioners maintained the following bank accounts and insurance policy and received the following interest income:

| Bank | Account No. | Interest income | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | 1959 | 1960 | 1961 | 1962 | 1963 |
| Sun Life of Canada | 5116982 | | | $61. 97 | $64. 63 | $66. 40 |
| Seattle First National Bank | 235701 | | | 94. 39 | 226. 77 | 287. 56 |
| Seattle First National Bank | 239341 | | | | 238. 03 | 233. 50 |
| Lincoln First Federal Saving | 40494 | $315. 98 | $357. 16 | 371. 68 | 405. 20 | 257. 25 |
| Lincoln First Federal Saving | 57408 | 231. 97 | 277. 43 | 292. 76 | 345. 42 | 336. 49 |
| Lincoln First Federal Saving | 57409 | 212. 54 | 254. 31 | 264. 65 | 324. 90 | 366. 02 |
| Lincoln First Federal Saving | 81625 | 64. 92 | 207. 16 | 302. 71 | 344. 63 | 180. 45 |
| Lincoln Virst Federal Saving | 83637 | 4. 68 | 20. 15 | 50. 17 | 95. 31 | 133. 51 |
| Lincoln First Federal Saving | 83638 | 4. 41 | 19. 07 | 47. 68 | 93. 41 | 128. 49 |
| Lincoln First Federal Saving | 39303 | 281. 09 | 336. 26 | 352. 63 | 390. 55 | 338. 15 |
| First National Bank | 52483 | 206. 60 | 186. 50 | 205. 06 | 62. 84 | 14. 95 |
| First National Bank | 54918 | 34. 13 | 77. 96 | 85. 45 | 107. 72 | 110. 96 |
| First National Bank | 1058 | | | | 360. 00 | 531. 63 |
| First National Bank | 53259 | 200. 67 | 233. 62 | 262. 47 | 13. 04 | 13. 41 |
| Old National Bank | 15400 | 244. 48 | 259. 16 | 268. 43 | 322. 76 | 65. 57 |
| Washington Trust Bank | D-3674 | 245. 88 | 238. 21 | 245. 87 | 253. 78 | 220. 78 |
| Washington Trust Bank | D-5128 | 15. 69 | 102. 87 | 205. 19 | 261. 02 | 268. 93 |
| Fidelity Savings & Loan | 26763 | 324. 61 | 388. 08 | 366. 41 | 375. 14 | 350. 53 |
| Fidelity Savings & Loan | 26361 | 319. 84 | 392. 20 | 382. 81 | 339. 68 | 346. 32 |
| Fidelity Savings & Loan | 59240 | 255. 68 | 339. 42 | 359. 89 | 364. 36 | |
| Fidelity Savings & Loan | 3265 | | 63. 76 | 67. 50 | 67. 50 | 67. 50 |
| Fidelity Savings & Loan | 77051 | | 14. 69 | 79. 65 | 142. 73 | 477. 95 |
| Total interest income | | 2, 963. 17 | 3, 818. 01 | 4, 367. 37 | 5, 199. 42 | 4, 796. 35 |
| Interest reported on returns | | 315. 98 | 357. 16 | 371. 68 | 190. 60 | 3, 998. 32 |
| Unreported interest income | | 2, 647. 19 | 3, 460. 85 | 3, 995. 69 | 5, 008. 82 | 798. 03 |

During the years in question, petitioners reported on their joint income tax returns "Interest Income" as follows:

| Year | Savings institution | | Amount |
|---|---|---|---|
| 1959 | Lincoln Savings | | $315. 98 |
| 1960 | Lincoln First Savings | | 357. 16 |
| 1961 | Lincoln Savings & Loan Association | | 371. 68 |
| 1962 | Lincoln First Federal | | 190. 60 |
| 1963 | Lincoln First Federal Saving | $1, 264. 97 | |
| | Washington Trust Bank | 220. 78 | |
| | Old National Bank | 65. 57 | |
| | Fidelity Savings & Loan | 764. 35 | 3, 998. 32 [sic] |
| | Sun Life Assn. Co. of Can | 66. 40 | |
| | First National Bank | 564. 34 | |
| | Spokane Eastern Bank | 282. 56 | |

In 1963, Mrs. Otsuki received Form 1099 from the banks notifying her that she was required to report interest income. However, Mrs. Otsuki failed to report $798.03 of a total of $4,796.35 earned interest, or approximately one-sixth omission of the interest income received in that year.

The method of operation of petitioners' farm produce business consisted of Mr. or Mrs. Otsuki negotiating orders over the telephone with the produce salesmen or managers of several local produce houses or stores in Seattle. Mrs. Otsuki had most of the contact with produce salesmen. The local produce market in Seattle fluctuates from day to day and varies greatly during the productive season of the various vegetables grown by the Otsukis. When Mrs. Otsuki would call the produce buyers, they would tell her the current price of a particular item of produce. Sometimes she would ask the price that was being paid for such produce, and on occasion, she would send the produce to the buyers without knowing the price which would be paid for it. Sometimes she would not deliver the produce to the buyers she had contacted because she was able to get more money from another produce house, but upon occasion, she would deliver the produce regardless of higher prices elsewhere. Mrs. Otsuki engaged in "considerable negotiation" with the produce buyer for Safeway Stores. The Otsukis received approximately the same price for their produce from the buyer for Safeway as other local growers.

Although Mrs. Otsuki was the principal negotiator with the produce houses, Mr. Otsuki occasionally negotiated with them and was generally aware of the prices of produce. Mr. Otsuki conversed with the produce buyers in English and was able to haggle over the prices paid for the produce.

Mr. Otsuki delivered the produce to the buyers, and at the time of delivery to the particular buyer, he would receive an invoice which he brought home and placed in a basket in his home. About once or twice a week, settlement sheets and checks in payment of the balances due from the produce houses were received by the Otsukis.

During the taxable period involved herein, Mrs. Otsuki took care of the books and records relating to the farming operations. She kept a spiral notebook in which she recorded the farm expenses. She retained receipts, including cash tickets, for purchases during a particular year and kept them in a box. At the end of the year, she separated the receipts according to the date received and recorded them in the notebook.

In 1961, Mrs. Otsuki recorded and subsequently deducted 36 different purchases of boxes from Safeway Stores totaling $414.60 as supply expenses. In 1962, Mrs. Otsuki recorded and thereafter deducted 6 different box purchases from Safeway Stores totaling $166.14 as supply expenses. The copy of the invoice given to petitioners by Safeway Stores disclosed the number of boxes and other items purchased from Safeway Stores by them. The invoice also bore a chronological number.

The check payable to the Otsukis by Safeway Stores in each instance had a memorandum receipt on the bottom which disclosed the total amount due for produce purchased, a deduction for the cost of boxes, lids, sacks, or other merchandise purchased from the store, and the net amount due to the Otsukis.

The expenses for boxes and other items were recorded in petitioners' notebook which indicated an invoice number from Safeway Stores, which number in turn was correlated to the periodic income statements received from Safeway Stores.

The farm expenses as recorded and as reported in the returns were verified by the internal revenue agent assigned to audit petitioners' returns for the period involved herein and were found to be accurate except for errors in addition of the totals made both for and against the petitioners.

The income statements received by petitioners from the produce houses were bound by a rubber band and a sheet of paper showing the total of such receipts from each produce company. Mrs. Otsuki totaled the income and the expenses at the end of each of the taxable years involved herein.

Mrs. Otsuki handled the banking activities of the produce business. All of the deposit slips were prepared by her. Her husband sometimes deposited the receipts in the bank, but he did not make out the deposit slips since he was unable to write English.

The Otsukis never invested their money except to put it in savings accounts. During the years involved, petitioners maintained 21 active savings accounts in six different banks.

Mr. Otsuki worked from 5:30 in the morning until 9 or 10 in the evening. He worked 7 days a week and has never taken a vacation.

When Mr. Otsuki signed the returns involved herein, he did not examine them to ascertain the accuracy of the figures reported therein.

Mrs. Otsuki prepared all of the income tax returns filed by the petitioners for the taxable years 1959 through 1963, inclusive. These returns were prepared from the records kept by her.

Mrs. Otsuki sought help from the Internal Revenue Service in preparing her joint Federal income tax returns. When she went to the internal revenue office in Spokane, Wash., for assistance, she already had totaled the income and expense figures and had placed these totals on the returns. The assistance rendered by the Spokane internal revenue office was limited to helping her with the depreciation schedules for farm machinery and the actual computation of the tax on the taxable income shown on the return.

On December 3, 1964, the day of the initial audit examination, the auditing agent asked petitioners for all of their savings account passbooks and received only 12 of the 21 available.

During the same audit conference, the agent asked Mrs. Otsuki if she had sold to any produce companies other than Pacific Fruit & Produce, Peirone Produce, and Spokane Vegetable Growers during the year 1963 and she told him that she had sold only to those three produce companies during that year. In 1963, however, she had sold to three additional produce companies, namely, Safeway Stores, Inc., Produce Supply Co., and Keiner Produce Co.

The petitioners are the same individuals who were the defendants in the criminal case of United States v. Tsuneo Otsuki and Tsuruko Otsuki, docket No. C–9033, in the Federal District Court for the Northern Division, Eastern District of Washington.

Petitioners entered a plea of not guilty on June 20, 1966, to the charges set forth against them in the indictment.

On November 1, 1966, Mrs. Otsuki withdrew her plea of not guilty and pleaded guilty to counts IV and V of the indictment which charged income tax evasion under section 7201 of the Internal Revenue Code of 1954 for the years 1962 and 1963. The U.S. District Court, on November 21, 1966, entered its judgment, fine, and commitment pursuant to such plea of guilty by Mrs. Otsuki.[3]

During the years 1959 to 1962, petitioners reported their gross income as compared with their properly includable gross income as follows:

| Year | Gross income stated on return | Properly includable gross income | Omitted gross income | Percentage of omission under sec. 6501(e) |
|------|------|------|------|------|
| 1959 | $12,934.33 | $24,404.50 | $11,470.17 | 88 |
| 1960 | 13,098.98 | 26,758.38 | 13,659.40 | 104 |
| 1961 | 14,735.69 | 32,456.78 | 17,721.09 | 120 |
| 1962 | 14,902.19 | 33,073.39 | 18,171.20 | 122 |

---

[3] As we read respondent's brief, we infer that he concedes that charges against Mr. Otsuki were dismissed upon Mrs. Otsuki's plea of guilty.

ULTIMATE FINDINGS OF FACT

During the taxable years 1959 to 1963, inclusive, petitioners were in receipt of substantial amounts of taxable income from several sources which they admittedly failed to include in their individual Federal income tax returns for such years.

A part of each such underpayment is due to fraud with intent to evade income taxes on the part of Mrs. Otsuki. Petitioners are liable for the addition to tax for fraud in 1959 through 1963, inclusive, under section 6653(b) of the 1954 Code.

Mrs. Otsuki is collaterally estopped from denying the addition to tax for fraud for the years 1962 and 1963 by reason of her conviction for criminal tax evasion for said years.

The assessment and collection of the deficiencies in taxes asserted herein for the taxable years 1959 to 1962, inclusive, are not barred by the statute of limitations.

OPINION

## Issue 1. Fraud

At the outset, we note that the parties have stipulated all of the material facts pertaining to the unreported income involved herein and counsel for petitioners has conceded that the deficiencies determined by respondent in his statutory notice for each of the taxable years 1959 through 1963, inclusive, are correct.

We then are concerned with the question whether or not a part of the underpayment due from the petitioners for each of the years 1959 to 1963, inclusive, was due to fraud with intent to evade tax within the meaning of section 6653(b) of the 1954 Code. Whether an understatement of income is due to fraud is a question of fact. The burden of proof with respect to fraud is upon the respondent and he must establish fraud on the part of the petitioners for each taxable year involved by clear and convincing evidence. *Cefalu* v. *Commissioner*, 276 F.2d 122 (C.A. 5, 1960), and *Baumgardner* v. *Commissioner*, 251 F.2d 311 (C.A. 9, 1957), both affirming Memorandum Opinions of this Court. In sustaining his burden of proof, respondent is not required to prove the precise amount of the underpayment resulting from fraud, but only that "any part" of the underpayment is attributable thereto. See *Estate of W. Y. Brame*, 25 T.C. 824 (1956), affirmed per curiam 256 F.2d 343 (C.A. 5, 1958).

Our conclusions with respect to the issue of fraud for the taxable years 1959 through 1963 are based upon consideration of the entire record properly before us, and we are not limited to a consideration of respondent's affirmative evidence. *Frank Imburgia*, 22 T.C. 1002, 1014

(1954) ; *Wallace H. Petit*, 10 T.C. 1253, 1257 (1948). We also recognize that in this, as in many fraud cases, proof of fraud, if it is to be established, must depend in some respects upon circumstantial evidence. Fraudulent intent can seldom be established by a single act or by direct proof of the taxpayer's intention. It is usually found by surveying his whole course of conduct and is to be adduced as any other fact from all the evidence of record and reasonable inferences properly to be drawn therefrom. *Charles E. Mitchell*, 32 B.T.A. 1093 (1935), (approved in *Helvering* v. *Mitchell*, 303 U.S. 391 (1938)) ; *M. Rea Gano*, 19 B.T.A. 518, 532 (1930).

We are mindful that respondent cannot meet his own burden of establishing fraud on the basis of petitioners' failure to discharge the burden of proving error in the determination of deficiencies, and we do not, of course, rest our findings on that basis. We have held that a mere understatement of income does not establish fraud. *James Nicholson*, 32 B.T.A. 977, 989 (1935), affd. 90 F.2d 978 (C.A. 8, 1937). The existence of fraud with intent to evade tax must be affirmatively established. *Drieborg* v. *Commissioner*, 225 F.2d 216, 218 (C.A. 6, 1955), affirming in part a Memorandum Opinion of this Court.

After analyzing all of the evidence in this case, bearing in mind the above-stated principles, we are convinced that Mrs. Otsuki knowingly received substantial taxable income belonging to petitioners during each of the years 1959 through 1963, inclusive, from their farming operations, and interest income in excess of that reported on their joint returns for those years, and that in each of such years, a part of each underpayment here involved was due to fraud with intent to evade taxes on her part. Petitioners' underpayments for the years in controversy did not result from mere carelessness or oversight, as they contend, but was due to her evasion of their obligation and duty to account for and report their total income. The affirmative evidence of intentional wrongdoing in the instant proceeding is by no means meager or equivocal. Bearing in mind that the intent to evade taxes must be found for each taxable year involved before the addition to tax for fraud for that year can be sustained, we turn our attention to consider the indicia of fraud in the years before us.

The record shows that during the taxable year 1959, petitioners were paid a total of $20,348.63 by Pacific Fruit & Produce Co., Spokane Vegetable Growers, Peirone Produce Co., and Safeway Stores, Inc., as compared to $11,074.60 shown on petitioners' books and records. Petitioners reported only $11,825.65 from the sale of produce on their joint return and omitted gross income of $9,274.03 from these buyers in 1959. Also, during the taxable year 1959, petitioners received interest income from 16 savings accounts in the total amount of $2,963.17, re-

ported $315.98 of that amount on their return, which resulted in unreported interest income of $2,647.19 in that year.

During the next taxable year, 1960, petitioners were paid a total of $22,174.27 from the produce buyers as compared to $12,035.73 recorded in petitioners' records. Petitioners reported only $12,015.72 on their joint return for 1960 and omitted $10,138.54 of income from this source. Likewise, during 1960, petitioners received total interest income from 18 savings accounts in the amount of $3,818.01, but reported only $357.16 of that amount on their return, which resulted in unreported interest income of $3,460.85 for that year.

During the following taxable year, 1961, petitioners were paid a total of $27,941.05 by four buyers of produce as compared to $14,005.65 recorded in petitioners' records. Petitioners reported only $14,215.65 on their return for that year and omitted gross income of $13,781.40 from this source. Also, during 1961, petitioners received total interest income from 19 savings accounts and an insurance policy in the total amount of $4,367.37, but reported only $371.68 of that amount on their return, which resulted in unreported interest income in the amount of $3,995.69 for that year.

During the taxable year 1962, petitioners were paid a total of $27,873.97 from the same four produce houses as compared to $14,294.57 recorded in their records. Petitioners reported only $14,047.34 on their joint return and omitted gross income of $13,579.40 from this source in 1962. Also, during 1962, petitioners received interest income from 21 savings accounts and an insurance policy in the aggregate amount of $5,199.42, but reported only $190.60 of that amount on their return, which resulted in unreported interest income in the amount of $5,008.82 for that year.

Finally, during the year 1963, petitioners received the aggregate amount of $26,114.55 from six produce houses as compared to the total amount of $15,140.14 recorded in their records. Petitioners reported only $20,140.14 on their return and omitted gross income of $5,974.41 from this source in 1963. Also, during 1963, petitioners received interest income from 20 savings accounts and an insurance policy in the total amount of $4,796.35, but reported only $3,998.32 on their return, which resulted in unreported interest income in the amount of $798.03 for that year.

It is clear from the foregoing that on their joint returns for each of the taxable years 1959 through 1963, inclusive, petitioners understated in substantial amounts their sales and income from their produce business as well as income from interest receipts. Such a pattern of omission or understatement of income for 5 consecutive years, while not conclusive, is strong evidence of an attempt to defraud the Government. Even if this case were devoid of the usual indicia of

fraud, the courts have held that consistent understatements of income in substantial amounts over a number of years by knowledgeable tax-payers, standing alone, are persuasive evidence of fraudulent intent to evade taxes. *Merritt* v. *Commissioner*, 301 F.2d 484 (C.A. 5, 1962) ; *Baumgardner* v. *Commissioner*, *supra* at 322; *Bryan* v. *Commissioner*, 209 F.2d 822, 828 (C.A. 5, 1954), certiorari denied 348 U.S. 912 (1955) ; *Jack M. Chesbro*, 21 T.C. 123, 131 (1953), affd. 225 F.2d 674 (C.A. 2, 1955), certiorari denied 350 U.S. 995 (1956).

In *Epstein* v. *United States*, 246 F.2d 563 (C.A. 6, 1957), certiorari denied 355 U.S. 868 (1957), the court stated at page 566:

The consistent understatement of large amounts of income for a number of years is evidence of willful intent to evade. Kurnick v. Commissioner, supra, 232 F. 2d 681; Drieborg v. Commissioner of Internal Revenue, 6 Cir. 225 F.2d 216. In Holland v. United States, supra, 348 U.S. 139 * * * the Supreme Court declared that "evidence of a consistent pattern of underreporting large amounts of income" will support "an inference of willfulness."

We are mindful that fraud cannot be inferred from a mere inadvertent understatement of income. *Holland* v. *United States*, 348 U.S. 121, 137 (1954). However, in the instant case, the understatements of income in each of the 5 years involved were both substantial in amount and in proportion to the amounts reported.

The evidence shows that during the years in question, petitioners reported farm produce income in amounts ranging from about $11,000 to $20,000 per annum, whereas, in fact, they received produce income ranging from $20,000 to $27,000 during each taxable year involved. They reported produce income of $72,888.30 on their returns for the 5-year period, whereas their true farm produce income for those years was determined to be $124,452.47, an understatement of $52,564.17 for the 5-year period. For each of the taxable years 1959 through 1962, inclusive, petitioners omitted from 42 percent to 49 percent of their farm income, and for the year 1963 they omitted 24 percent of such income from their returns.

As to petitioners' interest income, they reported a total of $5,233.74 on their returns for the 5-year period, whereas their true interest income was determined to be in the aggregate amount of $21,144.32, an understatement of $15,910.58 for the period. This resulted in an approximate 75-percent omission of interest income.

Petitioners omitted far more than 25 percent of their total gross income on their returns for the years 1959 through 1962, inclusive.

In further support of the substantial understatement of income by petitioners, it is significant that petitioners reported taxable income of $14,264.96 for the 5-year period, whereas their true taxable income was $82,751.70, an understatement of $68,486.74 for the 5-year period.

Likewise, we note that for the years 1959 to 1962, inclusive, the outstanding balances in petitioners' 21 savings accounts increased in the amount of $61,220.27, while petitioners were reporting taxable income in the total amount of $6,604.62 for the 4-year period. Significantly, during the years in question, petitioners were reporting taxable income ranging from $1,300 to $2,200, while the balances in their savings accounts were increasing in amounts ranging from $14,000 to $16,000. It is also noteworthy that petitioners were reasonably accurate in reporting their farm expenses while failing to report over half of their farm income. During 1961 and 1962, they were properly deducting expenses for boxes paid to Safeway Stores, Inc., without reporting any produce income from that company, although petitioners, during this period, received $13,672.58 from that source. It is also significant that petitioners, apart from minor errors in addition, accurately reported their produce income from Pacific Fruit & Produce and Spokane Vegetable Growers in 1961, while failing to report any income from Safeway Stores.

In addition to the consistent pattern of substantial understatements, there are other facts of record and convincing circumstantial evidence which sustain the view that respondent has met his burden of establishing that Mrs. Otsuki knowingly and intentionally evaded the payment of their taxes during the taxable years 1959 through 1963. Without suggesting that the following discussion is at all complete, we merely advert to the following indicia of fraud.

Preliminarily, we think there can be no doubt, under the circumstances, that the failure to keep records of all earnings is material evidence of fraud. *Baumgardner* v. *Commissioner, supra* at 322. To hold otherwise would, as the Supreme Court stated in *United States* v. *Johnson*, 319 U.S. 503, 518 (1943) "be tantamount to holding that skillful concealment is an invincible barrier to proof." Moreover, as was stated by the Court of Appeals in *O'Laughlin* v. *Helvering*, 81 F. 2d 269, 270 (C.A.D.C. 1935):

Taxation is not only practical—it is vital. The obligation of good faith and fair dealing in carrying out its provisions is reciprocal and, as the government should never be overreaching or tyrannical, neither should a taxpayer be permitted to escape payment by the concealment of material facts. * * *

During each of the years involved herein, Mrs. Otsuki failed to maintain adequate books and records of all of their business and investment receipts as required by law. Sec. 6001, I.R.C. 1954, and sec. 1.6001–1, Income Tax Regs. As set forth in our findings, such records as Mrs. Otsuki kept, contained incomplete, inaccurate, and misleading entries for petitioners' sales of produce during the period involved herein. The petitioners were obliged by law to keep complete records of their income-producing activities and they cannot

expect us to speculate as to the underlying facts. That petitioners may have been very busy and too tired to keep adequate records, in the context of the instant case, is not a reasonable explanation of the course pursued by them. It is significant that while Mrs. Otsuki accurately recorded and subsequently deducted all of their farm expenses, petitioners recorded only about one-half of the farm income. We are convinced that she was more than grossly negligent in the maintenance of petitioners' record-keeping system. The inadequacy of petitioners' records, under the circumstances, constitutes a significant indicia of fraud. *Abraham Galant*, 26 T.C. 354, 365 (1956).

Additional evidence of fraud is found in Mrs. Otsuki's failure to report all of their interest income which they admittedly received. During the years 1959 through 1963, inclusive, petitioners reported interest income on their returns in the total amount of $5,233.74, while failing to report interest income in the aggregate amount of $15,910.58. In 1963, they received a statement of interest income from their bank and Mrs. Otsuki reported the amount stated thereon, but nevertheless omitted other interest earnings in the sum of $798.03 in that year. We find no merit in petitioners' contention that they reported income from only one savings account for the taxable years 1959 through 1962, inclusive, because Mrs. Otsuki had been given this advice by an agent of the Internal Revenue Service in Spokane. Mrs. Otsuki testified that during each of the taxable years 1959 through 1962, she sought the assistance of the Internal Revenue Service in Spokane in preparing her joint Federal income tax return, and during the course of her meeting with the agent, asked him if she should report the interest from all of the 21 savings accounts owned by petitioners and the agent purportedly informed her that she should report the interest income from only 1 savings account. The record shows that when Mrs. Otsuki went to the internal revenue office in Spokane during the years involved, she had already totaled the income and expense figures for the taxable year in question and had placed these totals on the return. The assistance rendered by the agent was limited to helping Mrs. Otsuki with the depreciation schedules for farm machinery and the actual computation of the tax based on the income shown on the return.

Mrs. Otsuki's failure to report this interest income for taxation, in our opinion, is predicated on a patently lame and untenable excuse and evidences an intention to evade taxes. Considering all of the facts of record, we find her explanation in this respect hard to believe, particularly since the same alleged "misunderstanding" occurred in 4 consecutive taxable years. It is well established that taxpayers cannot escape responsibility for errors, not otherwise excusable, by shifting the blame to those who assisted in the preparation of the return. *Mad-*

*das* v. *Commissioner*, 114 F. 2d 548, 549 (C.A. 3, 1940), affirming 40 B.T.A. 572 (1939); *Sol H. Goldberg*, 36 B.T.A. 44, 53 (1937). This is particularly true in the instant case where important data was apparently withheld from the internal revenue agent or wrong information was given to him.

In exculpation of their consistent and substantial understatement of income in each of the 5 years involved herein, petitioners stress the fact that they are hard-working farmers of Japanese extraction and have considerable difficulty understanding the English language. Petitioners aver that Japanese is the language spoken in their household and that Mr. Otsuki particularly has trouble with the English language. Assuming that such problems existed during the period involved, we do not believe that foreign ancestry or linguistic difficulties relieves an individual residing in the United States from filing an accurate return. Moreover, Mr. Otsuki had resided in this country since 1924, a period of 44 years, and petitioners have lived in the Garden Springs area, a farming region near Spokane, which has many English-speaking residents. Mr. Otsuki's testimony that he conversed with the produce buyers and knew the current prices of vegetables in the produce market demonstrated a sufficient ability to comprehend and speak English. Mrs. Otsuki was born in the United States and attended English-speaking schools until the 12th grade. Her testimony showed that she is a business woman of average intelligence, able to understand the English language as well as certain tax matters. In our view, petitioners' understanding of English and business acumen was evident in their success in negotiating produce prices in a highly fluctuating seasonal market, and the obtaining of about the same prices for their produce from the buyer for Safeway as other local farmers.

Although petitioners attribute virtually all of their omissions of income to carelessness or lack of comprehension, they have offered no explanation for their evasive conduct during the audit of their returns. On the date of the initial audit investigation, when the revenue agent asked them for all of their savings account passbooks, he was given only 12 of the 21 books. Also, during the same audit conference, the agent asked Mrs. Otsuki if she had sold to any produce companies other than Pacific Fruit & Produce, Peirone Produce, and Spokane Vegetable Growers during the year 1963, and was informed that petitioners had sold only to those three companies during that year. Yet the evidence shows that during 1963, petitioners actually sold produce to six produce houses. Mrs. Otsuki's conduct in this respect must be deemed to have been motivated by a desire to conceal material facts from the revenue agent.

In determining whether a taxpayer had the necessary intent to evade tax and to defraud the Government, we recognize, of course, that "the

trier of the facts must consider the native equipment and the training and experience of the party charged." *E. S. Iley,* 19 T.C. 631, 635 (1952). Accordingly, we have observed petitioners during the trial of this case, taking note of their demeanor, ability to express themselves, and their understanding of the charges against them in the instant proceeding. Their conduct in understating gross income in each of the years involved has been considered in the light of their ancestry, their environment, and their experience in business activities.

Although Mrs. Otsuki had limited formal education and no academic or practical bookkeeping knowledge, we believe that her business experience, plus her general intelligence, must have made her aware of the record-keeping requirements of the revenue laws and her responsibility to report her income accurately. Therefore, we do not believe that the conceded understatements of income of the magnitude herein found were the result of her ignorance, oversight, or lack of comprehension.

That the Government dropped all charges against Mr. Otsuki in the criminal case and all charges against Mrs. Otsuki for the taxable years 1959 through 1961, inclusive, has no bearing on the issues involved herein. No evidence was presented herein to show why the charges were dropped. However, even if the petitioners were acquitted in a criminal tax evasion case, it in no way affects their liability for civil fraud in the present case. *William G. Lias,* 24 T.C. 280 (1955), affd. 235 F.2d 879 (C.A. 4, 1956).

Upon the basis of the foregoing and consideration of the record as a whole, we hold that the respondent has proved by clear and convincing evidence that a part of the deficiency in each of the taxable years 1959 through 1963, inclusive, was due to fraud on the part of Mrs. Otsuki with intent to evade taxes, and therefore, his determination of additions to the tax based on section 6653(b), for such years is upheld.

As for petitioner husband, there is a strong suspicion that he knew of the deliberate understatements of income in each of the taxable years involved. However, fraud is never to be presumed. The whole record has been painstakingly searched for evidence of intent on the part of Mr. Otsuki to defraud the Government. Respondent has not demonstrated clearly and convincingly that he had knowledge of the understatements of income in each of the taxable years before us; that he was in any way party to the concealment of such income; that he attempted to conceal any income of his own; or that he had any knowledge of his wife's fraudulent acts. In short, the evidence is insufficient to make a finding of fraud as to Mr. Otsuki for the years in question. Although we find him innocent of fraud as to the deficiencies involved, he is nevertheless liable for the determined income tax deficiencies, including the addition

to the tax for fraud, under section 6013 (d) (3) which provides for joint and several liability for tax on the aggregate income where a husband and wife elect to file a joint return. The joint and several liability of spouses on a joint return also applies to additions to the tax for fraud, despite the innocence or lack of knowledge on the part of the wife or the husband. See *Prokop* v. *Commissioner*, 254 F.2d 544 (C.A. 7, 1958), affirming a Memorandum Opinion of this Court; *W. L. Kann*, 18 T.C. 1032 (1952), affd. 210 F.2d 247 (C.A. 3, 1953), certiorari denied 347 U.S. 967 (1954); *Myrna S. Howell*, 10 T.C. 859 (1948), affd. 175 F.2d 240 (C.A. 6, 1949); *Dora S. Hughes*, 26 T.C. 23 (1956); *Lawrence Sunbrock*, 48 T.C. 55 (1967); and *Michael Pendola*, 50 T.C. 509, 521 (1968). Accordingly, we have no alternative but to hold that, even though the fraud was that of the wife alone, the imposition of the 50-percent addition to tax of the deficiencies in the joint returns filed for the years 1959 through 1963, inclusive, is mandatory.

### Issue 2. Collateral Estoppel and Statute of Limitations

Respondent contends that petitioners are collaterally estopped from denying respondent's determination of the addition to the tax for fraud for the taxable years 1962 and 1963 since Mrs. Otsuki was indicted, plead guilty, and was sentenced for criminal tax evasion under section 7201 of the 1954 Code. The record shows that Mrs. Otsuki plead guilty and was sentenced on two counts of violating section 7201, *supra*, which makes it a felony for any person to willfully attempt to evade or defeat the payment of any tax.[4]

Under the principles of collateral estoppel, Mrs. Otsuki may not now be heard to deny the imposition of the fraud penalty for 1962 and 1963 under section 6653 (b) where she has been convicted of felonious evasion of income taxes for those years in violation of section 7201, *supra*. *John W. Amos*, 43 T.C. 50 (1964), affd. 360 F.2d 358 (C.A. 4, 1965); *Moore* v. *United States*, 360 F.2d 353 (C.A. 4, 1965) (modified Apr. 29, 1966); and *Tomlinson* v. *Lefkowitz*, 334 F.2d 262 (C.A. 5, 1964). However, we have not relied upon the judgment in the criminal case against Mrs. Otsuki as to the taxable years 1962 and 1963 in reaching our conclusion hereinabove that the affirmative evidence in the record before us establishes that a part of the deficiency in each taxable year involved was due to fraud on her part with intent to evade tax within section 6653 (b), *supra*. See *Worcester* v. *Commissioner*, 370 F.2d 713 (C.A. 1, 1966), vacating in part a Memorandum Opinion of

---

[4] It is immaterial that Mrs. Otsuki's conviction was based upon a guilty plea because for purposes of applying the doctrine of collateral estoppel, as well as for other purposes, there is no difference between a judgment of conviction based upon such a plea and a judgment of conviction rendered after a trial on the merits. *Arctic Ice Cream Co.*, 43 T.C. 68, 75 (1964).

this Court.[5] Therefore, the issue of collateral estoppel is moot with respect to Mrs. Otsuki.[6] Moreover, in view of our holding that the returns for the taxable years 1959 through 1962, inclusive, were false and fraudulent with intent to evade payment of tax, the assessment and collection of the deficiencies and additions to the tax for those years are not barred by the statute of limitations under section 6501 of the Code of 1954. We add for completeness, however, that for all the years before us there was more than a 25-percent omission of gross income reported on petitioners' returns, and hence under section 6501(e), the period of assessment and collection is extended to 6 years. The period of assessment and collection has not, therefore, expired for the years before us.

*Decision will be entered under Rule 50.*

---

[5] Subsequently in *Thomas Worcester,* T.C. Memo. 1967–107, filed May 12, 1967, we followed the suggestion of the Court of Appeals.

[6] Likewise, we are not required to consider the question whether her husband, against whom the fraud charges were dropped in the criminal proceedings, is collaterally estopped from denying the charge of fraud against his wife as to 1962 and 1963 in the instant proceeding, see *Moore* v. *United States,* 360 F.2d 353, 357–358 (C.A. 5, 1964) ; or is further precluded from pleading the statute of limitations as to these years.