T.C. Memo. 2006-14

UNITED STATES TAX COURT

JOHN V. MAHER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9938-03.                    Filed January 31, 2006.

John V. Maher, pro se.

<u>Joseph J. Boylan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined the following

deficiencies and penalties with respect to petitioner's Federal

income taxes:[1]

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

|       |            | Fraud Penalty |
| Year  | Deficiency | Sec. 6663(a)  |
|-------|------------|---------------|
| 1995  | $4,025     | $3,019        |
| 1996  | 21,271     | 15,954        |

After concessions, the principal issue remaining for decision is whether petitioner is liable for the civil fraud penalty under section 6663(a).

FINDINGS OF FACT

The parties have stipulated many facts, which we incorporate herein by this reference. When he filed his petition, petitioner resided in Sewaren, New Jersey.

Background

In 1981, petitioner obtained an undergraduate degree in industrial engineering from Rutgers University. In 1985 he began working for the Internal Revenue Service as a valuation engineer, a position that he held during the years at issue. In 2000, as a result of the troubles described below, petitioner resigned his position with the Internal Revenue Service.

Fictitious Government Investment Program

Petitioner has been described as a compulsive gambler. On one of his periodic gambling trips to Las Vegas, Nevada, petitioner falsely represented to a longtime friend, Roy Kieffer, and various Kieffer family members (collectively, the Kieffers) that he could invest money for them in a Federal employee investment program, called "Stopgap Investments", with a

guaranteed 30-percent annual return.  In reality, there was no such investment program.

In February 1995, in reliance on petitioner's misrepresentations, the Kieffers sent petitioner funds totaling $9,500 to invest in the fictitious investment program. Petitioner gambled these funds away.  In February and May 1996, the Kieffers sent petitioner additional funds totaling $65,000 funds to invest in the fictitious investment program. Petitioner also gambled these funds away.

To further his fraudulent scheme and keep the Kieffers at bay, petitioner gave the Kieffers various fabricated documents. One of these documents, a doctored memorandum from the Federal Employees' Retirement System (FERS) dated March 14, 1995, falsely described petitioner's position as "Ass't Executive Director of Operations" at the Department of the Treasury.  The document purported to show that petitioner's account in the Stopgap Investments program had been opened for a total of $100,000, with a guaranteed 30-percent rate of return.  Petitioner also gave the Kieffers another purported FERS memorandum, dated April 15, 1996, which indicated that the guaranteed rate of interest had dropped to 10 percent on an investment of $200,000.  Finally, in 1998, petitioner gave the Kieffers a version of petitioner's own statements of retirement benefits, which had been altered to show

an account balance that purportedly included the funds petitioner had obtained from the Kieffers.

Petitioner's Bankruptcy, Civil, and Criminal Proceedings

In September 1996, petitioner filed a petition with the U.S. Bankruptcy Court for the District of New Jersey under 11 U.S.C. chapter 7.[2]  In December 1996, petitioner received a discharge from his debts in bankruptcy.

In 1999, the Kieffers sued petitioner in the Superior Court of New Jersey for the return of the money petitioner had fraudulently obtained from them.  In 2000, the civil action was resolved by an order for judgment by consent, dated June 25, 2000, whereby petitioner was ordered to pay the Kieffers $90,000. The consent judgment required petitioner to pay stated sums on or before certain specified dates and gave the Kieffers a first priority lien on funds in his Thrift Savings Plan and FERS accounts as well as any proceeds he was entitled to receive from an unrelated personal injury suit.

On or about October 4, 2000, petitioner entered into a plea agreement with the United States Attorney for the District of New Jersey.  He pleaded guilty to a one-count felony information charging him with devising an artifice and scheme to defraud and to obtain money through false pretenses, representations, and

---

[2] Petitioner did not list any of the Kieffers as creditors on his bankruptcy petition.

promises, all through use of the mails, in violation of 18 U.S.C. section 1341.

## Petitioner's Federal Tax Returns

For taxable years 1995 and 1996, petitioner timely filed self-prepared Forms 1040, U.S. Individual Income Tax Return. Petitioner reported gross income of $61,725 and $61,406 on his 1995 and 1996 tax returns, respectively. He reported none of the payments he had received from the Kieffers.

## Notice of Deficiency

On April 9, 2003, respondent mailed to petitioner a notice of deficiency for 1995 and 1996, determining that petitioner had unreported income of $9,500 for 1995 and $65,000 for 1996 and was liable for the civil fraud penalty for both years.[3]

### OPINION

At trial, petitioner conceded that he had unreported taxable income with respect to the Kieffers' cash payments to him in 1995 and 1996.[4] Consequently, the primary issue remaining for decision is whether petitioner is liable for the section 6663(a) civil fraud penalty.

---

[3] In the notice of deficiency, respondent also disallowed itemized deductions that petitioner had claimed for unreimbursed employee expenses. Before trial, the parties settled this issue, agreeing that petitioner had substantiated stipulated amounts of expenses, which for 1995 exceeded the expenses claimed on his return.

[4] Similarly, the parties have stipulated that the Kieffers' payments to petitioner were "income" to him.

I.  <u>Fraud Penalty</u>

To sustain his determination of civil fraud, respondent must show, by clear and convincing evidence, that petitioner intended to evade taxes known or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes.  Secs. 6663(b), 7454(a); Rule 142(b); see <u>Stoltzfus v. United States</u>, 398 F.2d 1002, 1004 (3d Cir. 1968); <u>Rowlee v. Commissioner</u>, 80 T.C. 1111, 1123 (1983).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  <u>Estate of Pittard v. Commissioner</u>, 69 T.C. 391 (1977); <u>Gajewski v. Commissioner</u>, 67 T.C. 181, 199-200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).  Fraud is not to be presumed or based upon mere suspicion.  <u>Wainwright v. Commissioner</u>, T.C. Memo. 1993-302 (citing <u>Carter v. Campbell</u>, 264 F.2d 930, 935 (5th Cir. 1959)).  Because direct evidence of a taxpayer's intent is rarely available, however, fraud may be proven by circumstantial evidence and reasonable inferences drawn from the facts.  <u>Spies v. United States</u>, 317 U.S. 492 (1943); <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 211 (1992); <u>Otsuki v. Commissioner</u>, 53 T.C. 96, 106 (1969).

Petitioner's scheme to defraud the Kieffers was reprehensible, but respondent has not convinced us that petitioner had any specific intent to evade taxes.  In this

proceeding, petitioner has never denied that he fraudulently misappropriated money from the Kieffers and that it was wrong to do so, although he alleges that these misdeeds were an isolated aberration in his conduct.  Petitioner maintains that he always intended to repay the Kieffers with interest for their "investments", and that he eventually did so, with liquidated damages, albeit pursuant to a consent judgment.  (He alleges that he would have repaid the Kieffers sooner but lacked the resources, having gambled himself into bankruptcy and being legally unable to withdraw funds from his Government retirement program.[5])  Although it betrays a sore lack of judgment (perhaps aggravated by a gambling compulsion) and does nothing to absolve him of wrongdoing, petitioner's testimony in this regard did not strike us as being dishonest or devious.[6]

Petitioner testified that when he filed his tax returns for 1995 and 1996, he believed that he was not required to report the Kieffers' payments to him as taxable income, "Because I

---

[5] Petitioner alleges that he did not list the Kieffers on his bankruptcy petition because he intended to repay them in full and did not seek to have his obligations to them discharged in bankruptcy.

[6] We are mindful that in sentencing petitioner for mail fraud, the presiding judge in the U.S. District Court of New Jersey stated:  "It's clear to me that that unfortunate circumstance [of petitioner's defrauding the Kieffers] was the result of a gambling compulsion, which doesn't excuse it, however you have made complete restitution to the Kiefers [sic], you have come forward and accepted responsibility and in an extraordinary way".

thought that if I received the money and I paid them back readily then that was not a taxable issue." Respondent has not shown with clear and convincing evidence that petitioner's understatements of income in 1995 and 1996 were the result of fraudulent intent rather than of petitioner's negligence or misunderstanding of the tax law. See Carr v. Commissioner, T.C. Memo. 1978-408.

Although petitioner was employed with the Internal Revenue Service as a valuation engineer during the years at issue (a position from which he has since resigned), we are not prepared to say that this circumstance, in and of itself, is circumstantial evidence of fraud. Respondent does not allege, and the record does not suggest, that petitioner's employment gave him any expertise or specialized knowledge in the tax laws. Insofar as the record reveals, petitioner had no training or experience in legal or accounting issues, and his work as a valuation engineer appears to have been only tangentially related to substantive tax issues. We are not persuaded that petitioner's general intelligence and sophistication, or the fact or manner of his preparing his own tax returns for 1995 and 1996 (with errors not totally in his favor, as respondent concedes), were such as to establish the requisite intent to evade taxes. Cf. Liddy v. Commissioner, T.C. Memo. 1985-107 (holding that former White House staff assistant and general

counsel of a Presidential reelection committee was not liable for the civil fraud penalty with respect to his unreported income from illegal activities, notwithstanding the taxpayer's education, professional background, and amoral conduct), affd. 808 F.2d 312 (4th Cir. 1986).

Respondent contends that petitioner maintained inadequate records and that this is circumstantial evidence of fraud. Although petitioner signed no loan agreements or other documents to evidence an investment or loan transaction with the Kieffers, we believe that petitioner's personal relationship with the Kieffers and the nature of the purported transactions credibly explain the absence of formal documents memorializing the Kieffers' "investments".[7]  Respondent does not allege, and the evidence does not suggest, that petitioner concealed records from respondent, refused to cooperate with respondent's investigation, made misleading statements to IRS agents during the course of the IRS investigation, destroyed any records, or altered any entries in his books.

On the basis of all the evidence in the record, we conclude that respondent has failed to prove clearly and convincingly

---

[7] Additionally, we are not convinced by respondent's argument that petitioner's failure to maintain adequate records to substantiate employee business expenses is circumstantial evidence of fraudulent intent to evade tax, particularly in light of respondent's concession that for 1995 petitioner has substantiated more employee business expenses than he claimed on his 1995 return.

that petitioner had the specific intent to evade taxes with respect to the money he obtained from the Kieffers. Accordingly, we hold that respondent has not carried his burden of proving fraud by clear and convincing evidence.

II.  Period for Assessment

Because we hold that petitioner is not liable for the fraud penalty, the exception of section 6501(c)(1) (permitting tax to be assessed at any time in the case of a false or fraudulent return with the intent to evade) is inapplicable.  At trial, respondent conceded that the exception of section 6501(e) is also inapplicable for 1995 because the $9,500 of gross income petitioner omitted from his 1995 return is less than 25 percent of the $61,725 of gross income he reported.  Respondent has not established that any other exception to the general 3-year limitation period applies for 1995.  Accordingly, respondent is time barred from assessing petitioner's 1995 taxes.

Petitioner has not pleaded or argued the statute of limitations with respect to respondent's assessment of his 1996 taxes; we deem petitioner to have conceded any such issue.  In any event, the exception of section 6501(e) is applicable, inasmuch as the amount of income petitioner omitted exceeded 25 percent (in fact, over 100 percent) of the gross income stated on his 1996 return.  Accordingly, respondent is not time barred from assessing petitioner's 1996 taxes.

To reflect the foregoing and the parties' concessions,

<u>Decision will be</u>

<u>entered under Rule 155</u>.