JOSEPH MICHAEL CURTIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Curtis v. Commissioner
Docket No. 38646-84
United States Tax Court
T.C. Memo 1990-233; 1990 Tax Ct. Memo LEXIS 240; 59 T.C.M. (CCH) 548; T.C.M. (RIA) 90233; May 14, 1990, Filed Joseph Michael Curtis, pro se. M. Kendall Williams and Michael S. Walsh, for the respondent. RUWE, Judge. RUWE
*780 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioner's 1983 Federal income tax and additions to tax as follows: Additions to Tax
Deficiency
Sec. 6653(b)(1) [1]
Sec. 6653(b)(2)
Sec. 6654
$ 3,645,464
$ 1,822,732
50 percent of
$ 223,077
the interest due
on $ 3,645,464.
The issues for decision are: (1) Whether petitioner received unreported income in the amount of $ 7,301,250 from narcotics trafficking; *242 (2) whether petitioner is liable for the self-employment tax under section 1401; (3) whether petitioner is liable for an addition to tax, as determined by respondent, under section 6654(a); and (4) whether petitioner is liable for additions to tax for fraud, as determined by respondent, under section 6653(b). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner was incarcerated at Lompoc Federal Prison Camp, Lompoc, California when he filed his petition. Petitioner did not pay any Federal income taxes and did not timely file Federal income tax returns for taxable years 1981, 1982, and 1983. On October 12, 1983, at approximately 9:30 p.m., Deputy Sheriff Cecil Bushong responded to a structure fire at the Dry Valley Ranch which is located near Termo, California. The owner of the Dry Valley Ranch was Bob Kelley, with whom petitioner was a business associate. En route, Deputy Bushong discovered a U-Haul van (van) approximately one-quarter mile north of the fire site. The van was parked perpendicular to the dirt road, facing west, with its rear wheels backed *243 down into a ditch. From his *781 patrol car, Deputy Bushong directed a flood light on the van. About this same time, Deputy Bushong was approached by petitioner and a female who was carrying a baby. From the ensuing conversation between petitioner and the female, Deputy Bushong had reason to believe that illegal aliens were in the rear of the van. Deputy Bushong opened the back door of the van and discovered a 35-gallon garbage can sitting on top of numerous duffle bags and suitcases. Inside the garbage can were plastic zip lock bags full of white powder, which later was determined to be cocaine. In the early morning of October 13, 1983, petitioner was placed under arrest by Deputy Bushong, and 649 pounds of cocaine was seized from the rear of the van. The cocaine was packaged in one kilogram quantities. Because of the large quantity of cocaine seized during petitioner's arrest, Deputy Bushong called for assistance from the Drug Enforcement Administration (DEA). The DEA determined that the cocaine seized from the rear of the van was 95 percent cocaine base. The structure that had caught fire on the Dry Valley Ranch was completely destroyed. It was located approximately *244 300 yards from the main residence. Firemen at the scene reported smelling strong chemical odors and observed numerous 5-gallon containers labeled "ether" and "acetone," and several 55-gallon drums full of liquid acetone in the area of the fire site. The building had been used as a laboratory for processing cocaine. During the investigation that followed, DEA agents seized additional bags of cocaine from the main residence area of the Dry Valley Ranch. A large quantity of the bags of cocaine that were seized from the van and the residence area were affixed with masking tape on which the letters "JM" were inscribed. One of the factors used in determining the wholesale price of cocaine is the geographic area where the cocaine is purchased. During 1983, south Florida was the primary entry point in the United States for large shipments of cocaine. During October 1983, cocaine having a purity range between 88 to 93 percent sold for a wholesale price of approximately $ 45,000 per kilogram on the East Coast, and approximately $ 60,000 per kilogram on the West Coast. The latter figure includes transhipment cost of the cocaine. Cocaine is normally paid for in advance prior to delivery. *245 When quantities of cocaine of the magnitude seized from the rear of the van are purchased on other than a cash basis, a charge of between 25 and 50 percent of the purchase price plus costs of shipment is normally paid in advance. At the time of his arrest, petitioner informed Deputy Bushong that he had recently driven a pick-up truck to the ranch. The pick-up truck and its contents were located on the ranch and subsequently searched and seized by DEA agents. Deputy Bushong was also present at the search. In the bed of the pick-up truck, approximately 30 full 5-gallon cans containing ether were discovered. Petitioner's identification was found in the pick-up truck along with a gold money clip containing $ 104 in cash. A bill of sale dated September 9, 1983, indicated that the pick-up truck was registered to "The Gunnery," 2731 Manhattan Beach Blvd., Redondo Beach, California. A 16-foot Aristocrat travel trailer was parked approximately 20 feet from the fire site at the Dry Valley Ranch. The travel trailer was registered in Nevada under the name of Joseph M. Curtis, 527 Penn Street, El Segundo, County of Los Angeles, California. On October 3, 1983, petitioner had purchased *246 the trailer from Webb's Recreational Vehicles, Reno, Nevada. Petitioner paid $ 2,221 in cash for the travel trailer. On October 13, 1983, an Audi automobile was seized during the arrest of Louis Bouzon at the Dry Valley Ranch. The Audi was registered in the name of Lori Giery, Manhattan Beach, California. The Audi was apparently sold to Ms. Giery, on September 22, 1983, for $ 7,497. The purchase price had been paid in cash. An envelope containing petitioner's travel reservations for October 11, 1983, on Western Airlines' Los Angeles to Reno flight was found during the search of this vehicle. On October 19, 1983, petitioner was indicted. Count Two of the indictment charged petitioner with knowingly and intentionally possessing, with an intent to distribute, approximately 718 pounds of cocaine, in violation of 21 U.S.C. sec. 841(a)(1) (1982). On December 15, 1983, petitioner testified that there was a factual basis supporting the indictment and pleaded guilty to Count Two. On April 27, 1984, in the United States District Court for the Eastern District of California, petitioner was sentenced to 15 years in prison and a fine of $ 25,000. Petitioner remained *247 in confinement in Lompoc, California. Petitioner's 15-year sentence was subsequently reduced to 10 years. Petitioner was represented by Victor Sherman regarding the charges brought against him as a result of his arrest on October 13, 1983. To pay for the legal services rendered by Mr. Sherman, petitioner endorsed a California tax refund check, in the amount of $ 12,500 to Mr. Sherman. Petitioner also paid an additional $ 8,000 to $ 15,000 in cash to Mr. Sherman. Additional unspecified amounts of money were also paid to Mr. Sherman for his representation. In the years prior to his arrest, petitioner engaged in numerous financial transactions. On November 24 and 25, 1980, petitioner, acting as the purported president of Helicopter Air Lift *782 Services, Inc. (HALS), filed five Aircraft Registration Applications for five Sikorsky S-58 Helicopters with the Federal Aviation Administration. The record reflects that, on April 12, 1979, four of the helicopters were purchased by petitioner, purportedly acting as president of HALS. The address that petitioner used on each Aircraft Registration Application and each Bill of Sale was 1264 So. Palm, #89, Las Vegas, Nevada. This *248 address is the address of the Palm Grove Mobile Home Park. Petitioner never resided at this mobile home park. The helicopters were stored at Bobs' Airpark, in Tuscon, Arizona. Records from Bobs' Airpark reflect a balance in the amount of $ 5,353.58, as of August 10, 1984, being owed by petitioner. HALS represented to Bobs' Airpark that its address was in Manhattan Beach, California. Petitioner maintained a residence in Manhattan Beach, California, during the period before his arrest. HALS did not have any employees and did not file any Federal income tax returns. Petitioner owned a one-half interest in real property located in El Segundo, California. Mr. A. P. LaRuffa owned the other one-half interest in this property. Petitioner and Mr. LaRuffa each paid $ 18,000 for this property. In January 1981, petitioner and Mr. LaRuffa borrowed $ 20,000 by executing a second deed of trust for this property. In September or October of 1983, petitioner transferred his interest in this property by executing a quitclaim deed to Mr. LaRuffa. On June 17, 1982, petitioner leased office space from Del Amo Financial Center as vice president and secretary of Hydrachem, Inc., a purported *249 Texas corporation. The term of the lease was for one year and began on June 18, 1982 and ended June 17, 1983. The office space leased for a monthly rental of $ 1,065.90. During taxable years 1980 through 1983, petitioner maintained a bank account at Mitsui Manufacturer's Bank (Mitsui Bank), 320 "B" Street, San Diego, California. Petitioner had a revolving line of credit in the amount of $ 75,000 from Mitsui Bank. On March 25, 1983, Mitsui Bank filed a "Complaint for Breach of Contract and for Money Paid" against petitioner in the Superior Court of the state of California, County of Los Angeles. The complaint prayed for damages in the amount of $ 38,298.67 as principal owed from petitioner, as well as interest, reasonable attorney's fees, and court costs. On September 8, 1982, petitioner purchased a Mercedes Benz automobile for $ 29,290 from South Bay Autohaus. Petitioner paid approximately two-thirds of the purchase price in cash and the balance with two personal checks. Immediately prior to his arrest, on October 13, 1983, petitioner was registered as a guest at the Marina City Club, Marina Del Rey, California. Petitioner was registered for 3 days in a room that had a *250 rate of $ 175 per day. Thereafter, petitioner was registered in a room that had a rate of $ 165 per day. The total amount of charges that petitioner incurred at the Marina City Club was $ 8,587.13. Cash receipts reflect that petitioner paid $ 3,500 in cash toward these charges. Petitioner was an associate of Louis Bouzon, a.k.a. Alex Newman, and Jorge Ivan Tobon- Lopez who were also engaged in narcotics trafficking. Petitioner did not maintain any books or records as to his income-producing activities, including narcotics trafficking, for taxable year 1983. On June 29, 1984, respondent made a jeopardy assessment against petitioner for taxable year 1983, in the amount of $ 3,642,936. Petitioner filed a complaint challenging the jeopardy assessment in the United States District Court for the Central District of California. Petitioner's complaint was subsequently dismissed with prejudice, on October 29, 1984. Respondent's statutory notice of deficiency in this case is based upon his June 29, 1984, jeopardy assessment. [2] In his notice of deficiency, respondent determined that petitioner received unreported income in the amount of $ 7,301,250 during taxable year 1983 from narcotics *251 trafficking. This amount was calculated by determining that one-half of the 649 pounds of cocaine seized from the rear of the van during petitioner's arrest, on October 13, 1983, belonged to petitioner and the remaining one-half to another individual. Respondent determined the wholesale cost of the cocaine to be $ 22,500 per pound, which is equal to $ 49,604 per kilogram. Respondent's computation of petitioner's gross income for taxable year 1983, which is contained in the notice of deficiency, is as follows: $ 22,500.00 per pound times 649 pounds
$ 14,602,500.00
Less 50% to other individual
7,301,250.00
Increase in income
$ 7,301,250.00
Respondent determined *252 that petitioner was entitled to one exemption for taxable year 1983, and computed petitioner's tax liability using the married filing separate tax rates. Respondent also determined that petitioner was liable for *783 the self-employment tax in the amount of $ 3,338. OPINION The first issue for decision is whether petitioner received unreported income in the amount of $ 7,301,250 from narcotics trafficking during taxable year 1983. In his petition, petitioner alleges that respondent's deficiency determination was arbitrary and unreasonable and without rational basis in fact. [3] If it is demonstrated that the notice of deficiency is arbitrary or without any foundation, the burden of going forward with the evidence shifts to respondent to establish the existence and amount of any deficiency. Jackson v. Commissioner, 73 T.C. 394, 401 (1979). *253 When a taxpayer asks this Court to find that the notice of deficiency is arbitrary, he is asking us to look behind the notice. Berkery v. Commissioner, 91 T.C. 179, 186 (1988), affd. 872 F.2d 411 (3d Cir. 1989); Shriver v. Commissioner, 85 T.C. 1, 3 (1985). As a general rule, we will not look behind the notice of deficiency to examine the evidence used or the propriety of respondent's motives in making his deficiency determination. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). This is because a trial before this Court is a proceeding de novo in which a taxpayer's tax liability is based on the merits of the case and not on any previous record developed at the administrative level. Greenberg's Express, Inc. v. Commissioner, supra at 327-328. On rare occasions, however, this Court has recognized an exception to the general rule and has looked behind the notice of deficiency. Those cases involved unreported illegal income where respondent introduced no direct or substantive evidence, but rested on the presumption *254 of correctness, and the taxpayer challenged the notice of deficiency. Berkery v. Commissioner, 91 T.C. at 186-187; Shriver v. Commissioner, supra at 3; Jackson v. Commissioner, supra at 401. The Court of Appeals for the Ninth Circuit, to which this case is appealable, has held that when the notice of deficiency determines that a taxpayer had unreported illegal income, respondent must come forward with some evidentiary foundation linking the taxpayer to the alleged income-producing activity. Adamson v. Commissioner, 745 F.2d 541, 546-547 (9th Cir . 1984), affg. a Memorandum Opinion of this Court; Weimerskirch v. Commissioner, 596 F.2d 358, 362 (9th Cir. 1979), revg. 67 T.C. 672 (1977). Petitioner was arrested on October 13, 1983 and during his arrest, 649 pounds of cocaine was seized from his possession. Petitioner's arrest took place on the Dry Valley Ranch which had been used as a laboratory for processing cocaine. Petitioner was a business associate of Bob Kelley, the owner of the Dry Valley Ranch. Petitioner was also an associate of other individuals who were engaged *255 in narcotics trafficking. The pick-up truck that petitioner had driven to the Dry Valley Ranch was discovered with 30 full 5-gallon cans of ether in its bed. Petitioner admitted that he was engaged in narcotics trafficking during 1983. Petitioner pleaded guilty to knowingly and intentionally possessing, with an intent to distribute, approximately 718 pounds of cocaine. We find that there is clear evidence in the record linking petitioner to narcotics trafficking during taxable year 1983. As a result, the burden is on petitioner to prove that respondent's determination is arbitrary or erroneous. Adamson v. Commissioner, surpa at 547; Petzoldt v. Commissioner, 92 T.C. 661, 691 (1989); Schad v. Commissioner, 87 T.C. 609, 620 (1986). Section 61 defines gross income as "all income from whatever source derived." The broad reach of section 61 includes gains from illegal activities. Sec. 1.61-14(a), Income Tax Regs.; James v. United States, 366 U.S. 213, 219-220 (1961). Section 6001 requires all taxpayers to maintain sufficient records to determine their correct tax liabilities. Petitioner failed *256 to maintain books or records. Absent adequate records, or if the records that are kept do not accurately reflect income, respondent may determine the existence and amount of a taxpayer's income by using any method that clearly reflects income. Sec. 446(b); Sutherland v. Commissioner, 32 T.C. 862, 866-867 (1959). In cases involving an illegal enterprise, such as the instant case, where the taxpayer has filed no returns and failed to maintain or produce any records, respondent is given great latitude in determining the method to be used in determining income. Petzoldt v. Commissioner, supra at 693; Jackson v. Commissioner, 73 T.C. at 403; see Adamson v. Commissioner, supra at 548. Respondent determined that petitioner received unreported income in the amount of $ 7,301,250 during taxable year 1983. This amount was calculated by determining the wholesale cost per pound of the 649 pounds of cocaine seized from the rear of the van during petitioner's arrest, on October 13, 1983, and attributing one-half of that amount to petitioner's *784 income and the remaining one-half to petitioner's associate. *257 Petitioner's only position at trial was that the cocaine was not his. The only evidence presented by petitioner to explain his possession of the cocaine was his testimony. His complete testimony on this point was as follows: And, let's see. On the cocaine, I was approached and offered that if I could sell this cocaine that they would give it to me to distribute; and also it had a problem in that it needed to be "washed". It was a bad product, and they needed it to be "cleaned up", so they offer -- asked if I could, in any way, help out in getting it "cleaned". So, we did the processing on it. No money was, changed (sic) hands. As a matter -- they gave me money to set up a deal. One of the -- Oh, no. I guess that's it. Petitioner never identified the purported true owner of the cocaine, or the person or persons who purportedly approached him to "wash" and distribute it. We found petitioner's testimony to be self-serving, evasive, and vague. Petitioner failed to introduce any other evidence at trial to corroborate his own testimony that ownership of the cocaine found in his possession should be attributed to someone else. [4] Petitioner has failed to meet his burden *258 of proof. The second issue for decision is whether petitioner is liable for the self-employment tax under section 1401 in the amount of $ 3,338. Respondent's determination is presumed correct, and petitioner bears the burden of proving otherwise. Rule 142(a). Petitioner's entire case was based on the premise that he did not own the seized cocaine. He has not met his burden of proof. Accordingly, we sustain respondent's determination on this issue. The third issue for decision is whether petitioner is liable for an addition to tax under section 6654(a). This section imposes an addition to tax, in the case of any underpayment of estimated tax by an individual. Petitioner did not pay any Federal income tax for taxable year 1983. The addition to tax under section 6654(a) is mandatory, *259 unless the taxpayer can place himself within one of the exceptions provided therein. Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071-1072 (1960). Petitioner offered no evidence on this point. Accordingly, we sustain respondent's addition to tax under section 6654(a). The final issue for decision is whether petitioner is liable for additions to tax for fraud under section 6653(b). Respondent bears the burden of proving by clear and convincing evidence that petitioner is liable for the additions to tax for fraud. Sec. 7454(a); Rule 142(b). The elements that respondent must prove in order to establish fraud are: (1) An underpayment of tax, and (2) that some part of this underpayment was due to fraud. Respondent bears the burden of proving each element. Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Habersham-Bey v. Commissioner, 78 T.C. 304, 311 (1982). Respondent cannot meet this burden on the basis of petitioner's failure to discharge the burden of proving error in respondent's deficiency determination. Petzoldt v. Commissioner, supra at 700; *260 Estate of Beck v. Commissioner, 56 T.C. 297, 363 (1971); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). Respondent determined the alleged underpayment of tax by using an indirect method of proof built on the premise that a substantial part of the cocaine found in petitioner's possession on October 13, 1983, was acquired by him from his 1983 earnings.[5] Petitioner's failure to keep or present any records of his financial dealings or to present any testimony regarding the details of his narcotics enterprise make it extremely difficult, if not impossible, for us to determine exactly how much of the cocaine belonged to petitioner, or exactly what amount of money he paid or what services he performed to acquire the cocaine. Mathematic exactitude, however, is not required in the utilization of indirect methods of reconstructing income. Petzoldt v. Commissioner, supra at 693. Such a requirement "would be tantamount to holding that skilful concealment is an invincible barrier to proof." United States v. Johnson, 319 U.S. 503, 517-518 (1943). The facts which we have found clearly prove that a substantial part of the *261 cocaine in petitioner's possession belonged to him, that he acquired it in 1983, that it had substantial value, and that he was engaged in the narcotics business during 1983. It is clear, based on the evidence in this record, that petitioner had a likely source of income during 1983. See Petzoldt v. Commissioner, supra at 692-696. Petitioner did not file an income tax return for 1983. Petitioner made no *785 claims of possible non-taxable sources of funds which could have been used to purchase the cocaine. He relied completely upon his assertion that none of the cocaine in his possession on October 13, 1983, belonged to him -- an explanation we find contrary to the evidence. On the basis of these findings, we conclude that respondent has clearly established that petitioner understated his 1983 income tax liability. *262 We must also determine whether petitioner's understatement of tax was due to fraud. An underpayment of tax is due to fraud when the taxpayer had a specific purpose to evade a tax known or believed to be owing. Petzoldt v. Commissioner, supra at 699; Wright v. Commissioner, 84 T.C. 636, 639-644 (1985); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Rowlee v. Commissioner, supra; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th. Cir. 1978). Fraud is never presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may be proven, however, through circumstantial evidence since direct evidence of the taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492 (1943); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. *263 Petzoldt v. Commissioner, supra; Rowlee v. Commissioner, supra; Stone v. Commissioner, 56 T.C. 213 (1971). In Bradford v. Commissioner, supra, the Court of Appeals for the Ninth Circuit set forth a nonexclusive list of the "badges of fraud" that are indicative of fraudulent intent. These include: (1) The understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealing of assets; and (6) failure to cooperate with tax authorities. The following are additional indicia of fraud: (1) Engaging in illegal activities; (2) attempting to conceal these activities; (3) dealing in cash; and (4) failing to make estimated tax payments. Bradford v. Commissioner, supra at 307-308; Meier v. Commissioner, 91 T.C. 273, 297-298 (1988). Most of these "badges of fraud" are present in the instant case. Petitioner failed to file Federal income tax returns for taxable years 1981 through 1983. While failure to file an income tax return is not, standing alone, proof of fraud, Rowlee v. Commissioner, supra, *264 it is persuasive circumstantial evidence that may be considered with other facts when determining whether an underpayment of tax is due to fraud. Bradford v. Commissioner, supra; Hebrank v. Commissioner, 81 T.C.at 642; Beaver v. Commissioner, supra at 93. Petitioner was engaged in narcotics trafficking during taxable year 1983, and was an associate of other individuals who engaged in narcotics trafficking during 1983. Petitioner's dealing in cocaine itself suggests a willingness to conceal income from the Government with an intent to evade taxes. Bradford v. Commissioner, supra.See also Cisneros v. Commissioner, T.C. Memo. 1980-358. Petitioner also engaged in substantial cash transactions during taxable year 1983, which is an indicia of fraud. Bradford v. Commissioner, supra.Petitioner's failure to maintain books or records of his income-producing activities during taxable year 1983 is further indicia of fraud. Lollis v. Commissioner, 595 F.2d 1189, 1192 (9th Cir. 1979), affg. a Memorandum Opinion of this Court; Wilson v. Commissioner, 76 T.C. 623, 633-634 (1981); *265 Otsuki v. Commissioner, 53 T.C. 96, 109-110 (1969). Finally, we note that petitioner has not filed timely income tax returns or paid any Federal income taxes since 1980, even though he was engaged in various businesses and financial transactions. Petitioner testified, in spite of substantial evidence to the contrary, that he did not own the cocaine that forms the basis for respondent's calculation of the deficiency determination. Petitioner's testimony was evasive and vague and failed to explain who actually owned the cocaine, or give a plausible explanation as to how it came into his possession. Considering the uncontroverted evidence of petitioner's possession of the cocaine with the intent to process and distribute it for profit, and the fact that many of the bags of cocaine were actually marked with petitioner's first two initials, we believe petitioner's trial testimony to be evidence of his continuing attempt to evade his taxes. Respondent has met his burden of proving that petitioner is liable for the additions to tax for fraud. Accordingly, we sustain respondent's determination under section 6653(b). Decision will be entered for the respondent. *266 Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The deficiency determined in respondent's notice of deficiency is greater than the deficiency determined in respondent's jeopardy assessment. This is because the notice of deficiency is based upon petitioner being married but filing a separate return, whereas the jeopardy assessment is based upon petitioner filing as a single taxpayer.↩
3. Although the parties were ordered to file briefs under Rule 151, petitioner did not do so. While we have decided this case on the facts, we note that failure to file a brief can be grounds for a default or dismissal. Stringer v. Commissioner, 84 T.C. 693 (1985), affd. without published opinion 789 F.2d 917↩ (4th Cir. 1986).
4. We are under no requirement to accept petitioner's uncorroborated, self-serving testimony as true. See Geiger v. Commissioner, 440 F.2d 688↩ (9th Cir. 1971), affg. a Memorandum Opinion of this Court.
5. Although respondent did not characterize his method, the determination in this case appears to be based on what is commonly referred to as the expenditures method. See Petzoldt v. Commissioner, 92 T.C. 661 (1989); Estate of Simeone v. Commissioner, T.C. Memo. 1983-317↩.