THOMAS T. SOTIROS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; BAY STATE SURVEYING SERVICE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sotiros v. Commissioner
Docket Nos. 4779-89, 4781-89
United States Tax Court
T.C. Memo 1991-95; 1991 Tax Ct. Memo LEXIS 114; 61 T.C.M. (CCH) 2057; T.C.M. (RIA) 91095; March 5, 1991, Filed *114 Decision will be entered under Rule 155 in docket No. 4779-89 for the taxable year 1983 and decision will be entered for the respondent in docket No. 4779-89 for the taxable years 1984 and 1985. Decision will be entered under Rule 155 in docket No. 4781-89 for the taxable years 1983 and 1984 and decision will be entered for the respondent in docket No. 4781-89 for the taxable year 1985. Jerome A. Packer and Robert B. Dugan, for the petitioners. Ronald F. Hood, for the respondent. HAMBLEN, Judge. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in Thomas T. Sotiros' Federal income tax and additions to tax for the taxable years 1983 to 1985 as follows: Additions to Tax under Sections [1]
Year
Deficiency
6653(b)(1)
6653(b)(2)
6661(a) 1983
$ 65,649
$ 32,825
50% of the
$ 16,412
interest due
on $ 65,649
1984
50,259
25,130
50% of the
12,565
interest due
on $ 50,259
1985
66,544
40,999
50% of the
16,636
interest due
on $ 66,544
*115 Respondent further determined deficiencies in Bay State Surveying Service, Inc.'s Federal income tax and additions to tax for the taxable years 1983 to 1985 as follows: Additions to Tax under Sections Year
Deficiency
6653(b)(1)
6653(b)(2)
6661(a) 1983
$ 46,192
$ 23,538
50% of the
$ 11,548
interest due
on $ 43,167
1984
29,925
14,962
50% of the
7,481
interest due
on $ 25,304
1985
15,265
[2] 39,291
50% of the
3,816
interest due
on $ 15,265
The issues to be decided are (1) whether Thomas T. Sotiros (hereinafter *116 petitioner) failed to report additional income in the amounts of $ 136,728, $ 104,056, and $ 134,692 on his Federal income tax returns for the taxable years 1983, 1984, and 1985, respectively; (2) whether Bay State Surveying Service, Inc. (hereinafter Bay State), failed to report additional income in the amounts of $ 137,792, $ 80,627, and $ 33,186 on its Federal income tax returns for the taxable years 1983, 1984, and 1985, respectively; (3) whether petitioner is liable for additions to tax under section 6653(b) for the taxable years 1983 through 1985 because all or part of his underpayment in each year was due to fraud; (4) whether Bay State is liable for additions to tax under section 6653(b) for the taxable years 1983 through 1985 because all or part of its underpayment in each year was due to fraud; (5) whether petitioner is liable for additions to tax under section 6661 for the taxable years 1983 through 1985 because his understatements in each year were substantial; and (6) whether Bay State is liable for additions to tax under section 6661 for the taxable years 1983 through 1985 because its understatements in each year were substantial. FINDINGS OF FACT Some of the facts *117 have been stipulated and are found accordingly. The stipulation of facts, its addendum, and the attached exhibits are incorporated herein by this reference. Bay State is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, having its principal place of business in Beverly, Massachusetts, at the time the petition in this case was filed. Petitioner resided in Burlington, Massachusetts, at the time the petition in this case was filed. Bay State filed its corporate income tax returns and petitioner filed his individual income tax returns for the calendar years ending December 31, 1983, 1984, and 1985 with the Director of the Internal Revenue Service Center in Andover, Massachusetts. Petitioner and Bay State, through their representative, Robert Nardella, executed consents extending the time in which respondent could assess tax for the taxable years 1983 and 1984. The consents extended the time for assessment to December 31, 1988. These consents applied to petitioner, individually, as well as Bay State. In June or July of 1976, petitioner began working with his two brothers, Arthur and Robert Sotiros (hereinafter Arthur and Robert), in the surveying *118 business. During the taxable years in question, this business was known as Bay State Surveying Service, Inc. Petitioner was the only full-time employee of the business when he began his employment in 1976. Petitioner is a high school graduate and has attended one year of college at Northeastern University in Boston, Massachusetts. Robert has a bachelor's degree in civil engineering from the University of Lowell. Further, Robert was superintendent of public works for the town of Swampscott during the taxable years in question. As superintendent of public works, Robert managed a budget in excess of one million dollars a year and had overall responsibility for the books and records of the public works department. During the years at issue, petitioner was the president and one-third shareholder of Bay State. He was responsible for the day-to-day operations of Bay State during the years at issue. Robert was the treasurer and one-third shareholder of Bay State during the years at issue. Petitioner and his brothers maintained two corporate checking accounts for Bay State during the years at issue. One account was maintained at Security National Bank (hereinafter Security), while *119 the other account was maintained at Warren Five Cents Savings Bank (hereinafter Warren). Both petitioner and Robert had personal knowledge of the existence of both accounts. During the taxable year ending December 31, 1983, $ 173,496.76 was deposited into Bay State's account at Security. During the same year, $ 60,079 was deposited into Bay State's Warren account. During the taxable year ending December 31, 1984, $ 232,088.70 was deposited into Bay State's Security account, while $ 31,018 was deposited into Bay State's Warren account. During the taxable year ending December 31, 1985, $ 369,588.35 was deposited into Bay State's Security account, while $ 40,742 was deposited into Bay State's Warren account. All of these deposits represented Bay State's corporate business receipts. At trial, petitioner could not identify any of the deposits made into Bay State's accounts at Security and Warren as coming from nontaxable sources from 1983 through 1985. However, Bay State only reported gross receipts in the amounts of $ 112,950, $ 195,836, and $ 384,148 for the taxable years 1983, 1984, and 1985, respectively. During the years at issue, the following accounts at the Beverly Savings *120 Bank (hereinafter Beverly) were open in the names of "Thomas T. Sotiros, or Robert J. Sotiros or Arthur Sotiros." All the accounts had petitioner's Social Security number on them. The accounts are listed below by year, number, and total interest earned: 1983
Account Number
Interest Earned 143571
$  49.28
800430
2,750.94
8020018
1,099.20
8031031
3,356.62
8031239
732.54
9105438
158.03
1984
Account Number
Interest Earned 4011282
$ 5,440.81  144157
37.02
8031031
509.87
8031239
262.41
9105438
3,191.56
9107582
7,710.00
9110305
1,674.35
9117623
3,050.00
1985
Account Number
Interest Earned 4011282
$ 5,981.59  9127325
1,104.16
9117623
7,191.67
9110305
1,867.92
9107582
6,804.24
9105438
2,773.00
Petitioner had control over all the above-noted accounts during 1983 through 1985 and could make withdrawals at any time. All the interest reported on the above-noted accounts was reported on petitioner's individual tax returns for the years 1983, 1984, and 1985. Robert hired William Colpitts, a certified public accountant, to prepare the 1983 and 1984 corporate tax returns of Bay State. Mr. Colpitts had been a certified *121 public accountant for 29 years and prepared approximately 200 tax returns for small corporations when he began working on the Bay State returns. In order to fully complete the 1983 and 1984 returns, Mr. Colpitts asked for all the books and records of Bay State. Petitioner and Robert maintained spiral notebooks for both Bay State's Security and Warren accounts in 1983 and 1984. However, neither petitioner nor Robert told Mr. Colpitts about the spiral notebooks. Instead, Robert prepared summary sheets for Mr. Colpitts in which he listed corporate expenses and gross income for 1983 and 1984. Robert told Mr. Colpitts that Bay State had $ 115,000 in total receipts for 1983 and $ 195,726 in total receipts for 1984. Neither petitioner nor Robert ever disclosed to Mr. Colpitts the fact that Bay State had a second corporate account, at Warren. Instead, Mr. Colpitts was informed by Robert that Bay State maintained only one corporate checking account, at Security. Mr. Colpitts relied on the information provided to him in order to complete Bay State's corporate returns for 1983 and 1984. Mr. Colpitts did not perform an audit of Bay State and did not examine the books and records of Bay *122 State to any extent beyond what was needed to prepare the corporate returns. Because Bay State did not provide Mr. Colpitts with adequate books and records to prepare the 1983 corporate income tax return, Mr. Colpitts set Robert up with a general ledger that contained a cash receipts journal and cash disbursements journal for use by Bay State in 1984 and Mr. Colpitts told Robert Sotiros that the Internal Revenue Service requires a formal set of books. In attempting to determine the amount of cash to be accounted for while preparing the corporate returns for 1983 and 1984, Mr. Colpitts utilized a method by which the difference between the total receipts reported to him less the disbursements reported to him would equal the cash to be accounted for. When Mr. Colpitts informed Robert that the balance in the Security account did not come close to equaling the cash that needed to be accounted for, Robert told him that the difference in cash should be stated on the returns as loans to shareholders. On its 1983 corporate income tax return, Bay State reported loans to shareholders in the amount of $ 25,656. On its 1984 return, Bay State reported additional loans to shareholders made *123 during the taxable year 1984 in the amount of $ 37,402. On its 1985 corporate tax return, Bay State reported additional loans made to shareholders during the taxable year 1985 in the amount of $ 133,639. Petitioner admitted that all of the loans to shareholders by the corporation were made to him. Petitioner neither repaid any of the money, or interest thereon, "borrowed" from the corporation nor executed any loan agreements pursuant to amounts allegedly borrowed. Only one document, dated May 16, 1986, relating to the loans is included in the record. These "loans" were deposited into petitioner's and his brothers' Beverly savings accounts. The money taken out of the corporation and deposited into the Beverly accounts during 1983 through 1985 was not reported on the 1983 through 1985 corporate income tax returns of Bay State. It was also not reported on petitioner's individual returns during the same years. During the preparation of Bay State's returns, Mr. Colpitts told Robert that there should be documents reflecting the fact that there were loans and the loans should be reflected in a corporate minute book because the Internal Revenue Service could construe the loans as salaries. *124 Notwithstanding this advice, only sketchy documents, as referred to above, evidencing loans to the shareholders are in the record. Mr. Colpitts was not retained by Bay State or petitioner to prepare their 1985 returns. Instead, Bay State and petitioner utilized the services of Robert Nardella, a certified public accountant. Mr. Nardella prepared both the Bay State corporate return for 1985 and petitioner's individual return for 1985. In completing Bay State's 1985 corporate income tax return, Mr. Nardella did not account for any of the money deposited into the Warren account. Mr. Nardella was never told of the Warren account while preparing the Bay State 1985 return. Further, he found out about the Warren account only after the 1985 corporate tax return was filed. In preparing Bay State's 1985 corporate tax return, Mr. Nardella converted all amounts paid out by Bay State on behalf of petitioner to "loans" from Bay State to petitioner. Such "loans" amounted to $ 133,639 in 1985. He made these conversions without any documentation to support the loans. While Mr. Nardella was performing accounting services for Bay State and petitioner, Bay State and petitioner came under examination *125 by the Internal Revenue Service for the taxable year 1985. This examination expanded to include the taxable years 1983 and 1984. An internal revenue agent was assigned to review the taxable years in question. During the investigation, many discrepancies in petitioner's and Bay State's financial affairs were uncovered. During the taxable years ending December 31, 1983, 1984, and 1985, Robert wrote checks drawn on the corporate checking account at Security to petitioner in the total amounts of $ 104,500, $ 113,340, and $ 159,840, respectively. All of the checks name petitioner as the payee and were signed by Robert as treasurer of Bay State. Petitioner endorsed the back of each check with his signature. During the years 1983 through 1985, petitioner wrote checks to cash or to himself in the total amounts of $ 7,535 in 1983, $ 9,330 in 1984, and $ 25,562 in 1985. These checks were drawn on Bay State's Warren account. Petitioner endorsed all the checks with his signature on the back of each check. Petitioner had control of the Warren account and could use the money in the account as he wanted to. Petitioner admits that corporate funds were used to pay for his personal expenses *126 during 1983 through 1985 and that he did not reimburse the corporation for any of the expenses. Petitioner used corporate automobiles for his personal use during 1983 through 1985 for which he neither paid any of the insurance bills nor reimbursed the corporation for the use of the automobiles. Petitioner also wrote checks to Prestige Travel, Banks Medical, and M & M Retail Credit, all drawn on the Warren corporate account during the years 1983 through 1985. These checks were for petitioner's personal expenses, and he has never reimbursed the corporation for any of the funds used for his personal use. Further, $ 6,000 of corporate funds was used to deposit $ 2,000 into each of the three Sotiros brothers' (Thomas, Arthur, and Robert) individual retirement accounts at Beverly. In an interview in June of 1986 among the internal revenue agent, petitioner, and Mr. Nardella, the internal revenue agent asked petitioner how many corporate accounts Bay State maintained. Petitioner responded that Bay State had only one account. However, on November 5, 1986, when the internal revenue agent was reviewing cancelled checks from Bay State's Security account, he found a check written to the *127 corporation which was deposited into an account at Warren. Prior to this time, neither any corporate officer nor Mr. Nardella had told the internal revenue agent that the corporation had a second checking account at Warren. Upon discovery of the second corporate account, the internal revenue agent informed Mr. Colpitts and Mr. Nardella of the Warren account's existence. Both Mr. Colpitts and Mr. Nardella stated they did not know of the existence of the Warren account prior to the internal revenue agent's discovery. None of the corporate business receipts deposited into the Warren account from 1983 through 1985 were ever reported on Bay State's 1983 through 1985 corporate income tax returns. During the same interview in June of 1986, petitioner, in response to the internal revenue agent's question concerning whether any personal expenses of any shareholder were being paid by the corporation, answered in the negative. The only corporate books and records that Bay State provided to the internal revenue agent with respect to the examination of the 1983 and 1984 corporate income tax returns were Security's cancelled checks, invoices, bank statements, general ledger, and check registers. *128 The only corporate books and records that Bay State provided to the internal revenue agent with respect to the examination of the 1985 corporate return were a dome book, cancelled checks, bank statements, and detailed trial balance summary sheets. Bay State did not provide the internal revenue agent with any spiral notebooks used by the corporation for its business records for any of the years at issue. On December 27, 1988, respondent issued notices of deficiency to Bay State and petitioner and notified them that a deficiency in income tax and additions to tax had been determined for their respective taxable years ending December 31, 1983, December 31, 1984, and December 31, 1985. On brief, Bay State admits that deficiencies on its 1983, 1984, and 1985 corporate income tax returns exist. Bay State also established four transfers between its Security account and its Warren account during 1983 and 1984. It likewise established one transfer from petitioner's Beverly account to Bay State's Security account in 1985. Further, Bay State has substantiated an additional $ 3,431 in subcontractor expenses in 1983. OPINION I. The Underlying Deficiencies
Bay State admits it failed *129 to report all proper amounts of income on its 1983, 1984, and 1985 income tax returns. Therefore, Bay State concedes that underlying deficiencies exist. However, Bay State contests the amounts of the deficiencies, asserting that they are too high. In support of this assertion, Bay State cites four transfers in 1983 and 1984 where money was transferred from Bay State's Security account into its Warren account. Bay State also cites one transfer in 1985 from petitioner's account at Beverly to Bay State's Security account. Bay State asserts that these transfers were not additional business receipts, but rather a mere movement of business receipts. Bay State additionally points to the fact that an additional $ 3,431 in deductions for payments to independent contractors in 1983 can be substantiated. Finally, Bay State disputes that all $ 30,000 of missing or illegible checks went to nondeductible sources. Petitioner does not admit the existence of any deficiencies. Instead, petitioner asserts that the money he received from Bay State from 1983 through 1985 was indeed borrowed from the corporation and should not be includable as income to him. He also argues that the funds transferred *130 from the corporation to him were deposited into other accounts. Therefore, he argues that he never received the benefit of the transferred funds. Further, petitioner points out that $ 3,431 in missing checks from the Warren account have been accounted for. Since the checks went to subcontractors in 1983, he asserts that $ 3,431 should be excluded from respondent's determination of his underpayment for that year. Respondent argues that it is totally immaterial what petitioner did with the funds transferred to him from Bay State. Petitioner admitted having control over the funds and could use the money as he saw fit. Therefore, respondent determined these amounts to be properly includable as income to petitioner during the years in question. Respondent further argues that the $ 3,431 now documented as being paid to subcontractors in 1983 was not substantiated to the satisfaction of the internal revenue agent. Therefore, respondent asserts its proper inclusion in petitioner's 1983 gross income. Gross income includes all income from whatever source derived. Sec. 61; Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 99 L. Ed. 483, 75 S. Ct. 473 (1955). Respondent's deficiency determinations *131 are presumptively correct, and the burden of proof is on Bay State and petitioner to show that they are incorrect. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Further, Bay State and petitioner bear the burden of proof to show that they are entitled to deductions greater than those allowed by respondent. Welch v. Helvering, supra; Rule 142(a). This burden of proof includes establishing both the right to and the amount of the deduction. Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 40 L. Ed. 2d 717, 94 S. Ct. 2129 (1974); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 78 L. Ed. 1348, 54 S. Ct. 788 (1934). A. Bay State
In the case before us, Bay State admits that deficiencies in its 1983, 1984, and 1985 corporate tax returns exist. Bay State only argues that the determined deficiencies are too high. Bay State has shown substantiation for four transactions in 1983 and 1984 which indicate a transfer of corporate receipts took place from the corporation's Security account to its Warren account. These transfers do appear to be mere transfers of receipts that would have been counted twice under respondent's method of *132 computing gross receipts. Therefore, these amounts, totaling $ 5,600 in 1983 and $ 200 in 1984, [3] should be reduced from respondent's determination of Bay State's gross income for the taxable years 1983 and 1984, respectively. Bay State's assertion that a fifth check in the amount of $ 5,000 should be credited against its 1985 underpayment is not well taken. [4] This check was drawn upon the personal account of petitioner and paid to Bay State's corporate Security account. It is not a mere transfer of corporate funds as both its origination and destination were not corporate accounts. Therefore, no adjustment to Bay State's underpayment or respondent's determined deficiency for 1985 shall be made on account *133 of this check. Bay State has also adequately substantiated an additional $ 3,431 in deductible subcontractor expenses for the taxable year 1983. Therefore, this additional deduction, now substantiated, should correspondingly reduce Bay State's 1983 underpayment. With the exception of the few above-noted adjustments, we find that Bay State has failed to overcome the presumption of correctness given to respondent's deficiency determination. Bay State has failed to substantiate any other deductions it claimed during the taxable years 1983 through 1985. Further, Bay State has otherwise failed to meet its burden of proof as to the determined deficiencies. Therefore, with the exception of the above-mentioned adjustments, we find that respondent's determination of Bay State's deficiencies for the taxable years 1983, 1984, and 1985 are correct. B. Petitioner
Petitioner argues that an adjustment of $ 3,431 *134 should be made to respondent's determination of petitioner's underpayment for 1983 since this amount has now been accounted for as being paid to subcontractors instead of directly to petitioner. We agree. Since there now exists adequate substantiation for $ 3,431 being paid to subcontractors instead of distributed to petitioner, it is proper to reduce the determined deficiency by an amount reflecting the lesser underpayment of petitioner on his 1983 return. Next, petitioner asserts that the funds he received from Bay State were loans and, thus, not includable as gross income on petitioner's tax returns for the years at issue. He further argues that he never received the benefit of the funds and should not have to report them as income. We disagree. The record clearly indicates that petitioner received corporate distributions from Bay State over the three years at issue in this case. Robert testified that all "loans" made by Bay State during the years in issue were made to petitioner. Petitioner admitted that he received the funds and was able to use the money received in any manner he saw fit. Petitioner also admitted never repaying any of the money, or any interest thereon, *135 to the corporation. Further, Mr. Colpitts and Mr. Nardella acknowledged that the loan arrangement was nothing more than an accounting device to keep the corporate books in balance. Petitioner's assertion that, since he did not receive the benefit of the money, he was not required to report it on his tax returns during the years in issue is totally without substance and lacks all basis in reality. Not only is petitioner's contention of what constitutes gross income flawed, but the record is replete with instances where petitioner received the benefit of the money distributed to him by Bay State. Petitioner confirms that the money was his to do with and spend as he pleased. Further, he alone recognized all interest on the deposited money on his personal returns. Many instances were presented that established petitioner used these corporate funds for his personal use. After reviewing the entire record in this case, we find that petitioner has failed to overcome respondent's presumption of correctness for all matters relating to respondent's determined deficiencies for the taxable years in question with the exception of the $ 3,431 adjustment in 1983 to petitioner's understatement. *136 Therefore, with the exception of the above-noted adjustment, respondent's determined deficiencies for the taxable years 1983, 1984, and 1985 are found to be correct II. Additions to Tax for Fraud
Respondent determined that additions to tax for fraud were appropriate in that petitioner and Bay State consistently and substantially understated their income. First, respondent argues that such understatements were intentional and were intended to evade tax Bay State and petitioner knew they rightfully owed. Second, respondent argues that petitioner's diversion of corporate funds for his personal use is indicative of fraud. Third, respondent argues that Bay State and petitioner attempted to conceal the true nature of the diversion of corporate funds for personal use. Finally, respondent argues that petitioner and his brother Robert were intelligent men who knew that what they were doing was fraudulent. Both Bay State and petitioner assert that they relied upon the advice of competent advisers after making full disclosure. Further, petitioner argues that both he, as a representative of Bay State and individually, and his brother Robert, as an officer of Bay State, are inept *137 and incapable of forming the requisite intent to be held fraudulent. Section 6653(b) provides for an addition to tax if any part of a year's underpayment is due to fraud. The addition to tax is an amount equal to 50 percent of the amount of the underpayment. The burden of proving fraud by clear and convincing evidence is upon respondent. Sec. 7454(a); Rule 142(b); Stone v. Commissioner, 56 T.C. 213, 220 (1971). Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Professional Services v. Commissioner, 79 T.C. 888, 929-930 (1982); Estate of Pittard v. Commissioner, 69 T.C. 391, 400 (1977). Corporate fraud necessarily depends upon the fraudulent intent of the corporate officers. American Lithofold Corp. v. Commissioner, 55 T.C. 904 (1971). Whether fraud exists with respect to a particular tax year is a factual question which must be resolved by an examination of the entire record. Since fraud can seldom be established by direct proof, the requisite intent may be inferred from any conduct, the likely effect of which would be to conceal, mislead, or otherwise *138 prevent the collection of taxes that petitioner knew or believed he owed. Spies v. United States, 317 U.S. 492, 499, 87 L. Ed. 418, 63 S. Ct. 364 (1943); Rowlee v. Commissioner, 80 T.C. 1111 (1983); Professional Services v. Commissioner, 79 T.C. at 930. Respondent need not prove the precise amount of underpayment resulting from fraud, but only that there is some underpayment and that some part of it is attributable to fraud. Otsuki v. Commissioner, 53 T.C. 96, 105 (1969). Having previously found the existence of underpayments in both Bay State's and petitioner's 1983, 1984, and 1985 returns, we must now determine if any of the underpayments for each of the years at issue resulted from fraud. We must determine whether Bay State and petitioner each voluntarily and intentionally evaded a tax which they knew they were obligated to pay. The underpayment must have resulted from something more than their honest mistake as to the transfers involved and their failure to report income. Many facts exist in this case that clearly and convincingly establish that petitioner and Robert, as officers of Bay State, and petitioner, in his individual *139 capacity, blatantly and intentionally endeavored to conceal, mislead, and otherwise prevent the collection of taxes knowingly owed by them. Examining all of the facts as a whole, respondent has proven that Bay State and petitioner acted fraudulently. A. Bay State
Petitioner and Robert, as corporate officers of Bay State, failed to inform their accountants, William Colpitts and Robert Nardella, that the corporation maintained more than one business checking account during the taxable years at issue. They also intentionally withheld corporate records from their accountant during the years at issue. By not supplying all the relevant corporate documents to their accountants during the preparation of Bay State's tax returns for the years in issue, petitioner and Robert intentionally withheld information that they knew would increase the amount of taxable income Bay State would have to recognize. Instead, they withheld the relevant documents and knowingly established a scheme of secreting the corporate income out of corporate accounts by pretending the corporation "loaned" money to its shareholders. They then did not recognize the "loaned" amounts on either the corporate return *140 of Bay State or the personal return of petitioner. However, even if the loans were bona fide, which we do not find, the income earned by Bay State must still be recognized in the year it was earned. It was not. Bay State's and petitioner's concealment of accounts and their failure to disclose all relevant documents to their accountants also impacts on their argument that they relied on the advice of competent advisers after full disclosure of all relevant facts. We find no merit in this argument since Bay State and petitioner did not make full disclosure of all facts necessary for their accountants to properly prepare their 1983, 1984, and 1985 corporate and personal returns. To the contrary, Bay State and petitioner made every effort to conceal information needed by the accountants. Further, petitioner intentionally gave false information to the internal revenue agent during their June 1986 interview. Petitioner told the internal revenue agent that Bay State had only one corporate bank account when such was not the case. In fact, petitioner had control over another corporate account which he failed to reveal, although he knew of its existence. Petitioner also told the internal *141 revenue agent that Bay State did not pay any of the personal expenses of the shareholders. Petitioner made this statement with full knowledge that Bay State has been making numerous payments for the shareholders' personal expenses during the years at issue, including individual retirement account contributions, car payments, medical payments, etc. In fact, petitioner later admitted that Bay State had made some payments on his behalf during the years in question. We find that these false statements to the internal revenue agent are another indication of fraud on behalf of both Bay State and petitioner. Both petitioner and his brother are educated and successful men. Their education and work experience contradict petitioner's argument that both he and his brother were "inept" and incapable of forming the intent necessary to find fraud against Bay State. Based on the above facts and the entire record in this case, we find that Bay State, through its officers, concealed information and developed a "loan" scheme for the purpose of evading taxes knowingly owed by the corporation. Therefore, after noting our earlier adjustments to Bay State's 1983 and 1984 understatements, [5] Bay *142 State is subject to the additions to tax pursuant to section 6653(b) for its 1983, 1984, and 1985 taxable years. B. Petitioner
Petitioner, in his individual capacity, failed to disclose Bay State's Warren account to Bay State's accountants. He continued his deceit when he hid the existence of the Warren account from the internal revenue agent during their meeting in June 1986. While these facts clearly establish an intent to conceal on behalf of the corporation, they also establish that petitioner intended to conceal the income he received from the Warren account during the years at issue. Petitioner had total control over the Warren account and made several withdrawals from the account for his personal use. By not disclosing the existence of the Warren account, he thereby concealed his use of corporate income for his personal uses. We find that petitioner's actions, or lack thereof, were intended by him to evade personal income tax he knew he rightfully *143 owed in each of the years at issue. Further, petitioner utilized a scheme in which Bay State allegedly loaned money to petitioner instead of distributing it to him. This scheme was intended to pass on corporate income to petitioner in a manner in which petitioner would not have to recognize income on his personal returns. However, the facts indicate that there was no business purpose for this plan and that the plan was nothing more than a scheme to avoid the payment of petitioner's taxes he knew he rightfully owed. There is no convincing evidence in the record to establish that these alleged loans were bona fide. There were no corporate minutes or documents to corroborate the purported loan transactions. No interest rate was set. No payment schedule was set up. In fact, petitioner testified that he never repaid any of the money, or interest thereon, to the corporation. Further, both Mr. Colpitts and Mr. Nardella confirmed that the loan plan was merely a scheme to balance the corporate books. Finally, petitioner admitted that Bay State had paid some of his personal expenses during each of the years at issue. Petitioner also acknowledged that he did not report as income any *144 amounts paid by the corporation on his behalf. We find that this ongoing and substantial understatement of petitioner's income is another indication of petitioner's fraudulent intent. Based on the above facts and the entire record in this case, we find that petitioner concealed information and developed a "loan" scheme for the purpose of evading taxes knowingly owed by him. We further find that his ongoing plan of understating income he knew he rightfully owed is indicative of his fraudulent intent. Therefore, after making the above-noted adjustments in petitioner's 1983 understatement, [6] petitioner is subject to the additions to tax pursuant to section 6653(b) for his 1983, 1984, and 1985 taxable years. III. Substantial Understatement
Respondent determined that both Bay State and petitioner are subject to the additions to tax under section 6661 for each of the years at issue because they substantially understated the proper amount of income tax owing *145 in each year. Petitioner argues that he did not substantially understate his income tax because the transfers from Bay State to himself were mere loans and, as such, not reportable as income. Further, petitioner asserts that the waiver provisions of section 6661 are applicable. Section 6661 provides a 25-percent addition to tax if there is a substantial understatement of income tax in the year at issue. In determining if an understatement is substantial, section 6661(b)(2)(B)(ii) provides for a reduction of the understatement where there is, or was, substantial authority for petitioner's treatment. Taking into account the above limitation, an understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown for the taxable year. In the case of a corporation, however, section 6661(b)(1)(B) sets forth that an understatement is substantial if it exceeds the greater of $ 10,000 or 10 percent of the tax required to be shown for the taxable year. Having already found that understatements of income tax exist for both Bay State and petitioner during each of the taxable years in question, we must now determine if these understatements are *146 substantial. Even after adjusting the understatements of Bay State and petitioner for the checks and subcontractor expenses now substantiated, Bay State's and petitioner's understatements of income tax in each of the taxable years at issue are substantial. Therefore Bay State and petitioner are each subject to the additions to tax under section 6661 for their taxable years 1983, 1984, and 1985. Petitioner's assertion that Respondent should have exercised his authority to waive the section 6661 addition to tax given to him under section 6661(c) is not persuasive. First, the failure of respondent to grant a waiver was not raised at trial. Moreover, there is nothing in the record to indicate that respondent was requested to exercise his waiver authority. In any event, we are satisfied that Bay State and petitioner have not carried their burden of proof under Rule 142(a) that respondent abused his discretion in not waiving the additions to tax under section 6661. Mailman v. Commissioner, 91 T.C. 1079 (1988). Therefore, we find that Bay State and petitioner are subject to the additions to tax under section 6661. CONCLUSION
After reviewing the entire record, *147 we find that Bay State failed to report income on its 1983, 1984, and 1985 corporate tax returns that was properly due and owing. After adjusting respondent's determined deficiencies due to the reduction in Bay State's understatement reflected by the further substantiated subcontractor expenses and transfers of corporate business receipts, [7] we find respondent's determined deficiencies to be correct. We further find that Bay State, through its officers, acted fraudulently with respect to its underpayments in each of the years at issue. Therefore, the additions to tax under section 6653(b) are applicable. Finally, we find that Bay State's understatements are substantial under section 6661. Therefore, the section 6661 additions to tax for each of the years at issue are applicable. We also find that petitioner failed to report on his 1983, 1984, and 1985 personal income tax returns all income paid to or otherwise received by him. After adjusting respondent's *148 determined deficiency in 1983 due to the reduction in petitioner's understatement reflected by the further substantiated subcontractor expenses, [8] we find respondent's determined deficiencies to be correct. We further find that petitioner acted fraudulently with respect to his underpayments in each of the years at issue. Therefore, the additions to tax under section 6653(b) are applicable. Finally, we find that petitioner's understatements are substantial under section 6661. Therefore, the section 6661 additions to tax for each of the years at issue are applicable. To reflect the foregoing, Decision will be entered under Rule 155 in docket No. 4779-89 for the taxable year 1983 and decision will be entered for the respondent in docket No. 4779-89 for the taxable years 1984 and 1985.
Decision will be entered under Rule 155 in docket No. 4781-89 for the taxable years 1983 and 1984 and decision will be entered for the respondent in docket No. 4781-89 *149 for the taxable year 1985.
Footnotes
1. Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure and section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue.↩
2. The notice of deficiency, dated Dec. 27, 1988, determined that Bay State did not file a valid Application for Automatic Extension of Time to File Corporate Income Tax Return for 1985. This decision was based on the fact that Bay State did not put the correct tax liability on the application. Therefore, the addition to tax under sec. 6653(b)(1)↩ for Bay State's 1985 taxable year was computed on the entire tax liability rather than on the deficiency alone.
3. The four transactions from Bay State's Security account to Bay State's Warren account are: check #2396 in the amount of $ 4,000 on Sept. 7, 1983; check #2500 in the amount of $ 1,000 on Nov. 18, 1983; check #2503 in the amount of $ 600 on Dec. 12, 1983; and check #2550 in the amount of $ 200 on Jan. 6, 1984.↩
4. This transfer has an unidentified check number in the amount of $ 5,000 and took place on March 18, 1985.↩
5. See analysis on the underlying deficiencies, supra↩.
6. See analysis on the underlying deficiency, supra↩.
7. See analysis on the underlying deficiencies, supra↩.
8. See analysis on the underlying deficiency, supra↩.